# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, M.C. HOLIFIELD, A.Y. MARKS**
Appellate Military Judges

## UNITED STATES OF AMERICA

v.

## LAMONT E. HOYES
## CULINARY SPECIALIST FIRST CLASS (E-6), U.S. NAVY

### NMCCA 201300303
### GENERAL COURT-MARTIAL

**Sentence Adjudged:** 25 January 2013.
**Military Judge:** CDR Colleen Glaser-Allen, JAGC, USN.
**Convening Authority:** Commander, Naval Air Force Atlantic, Norfolk, VA.
**Staff Judge Advocate's Recommendation:** CAPT T.J. Welsh, JAGC, USN.
**For Appellant:** Maj John Stephens, USMC; LT Jennifer Pike, JAGC, USN.
**For Appellee:** LCDR Keith Lofland, JAGC, USN; Capt Matthew M. Harris, USMC; LT Amy Freyermuth, JAGC, USN.

### 20 August 2015

---
### OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

HOLIFIELD, Judge.

A panel of officer and enlisted members sitting as a general court-martial convicted the appellant, contrary to his pleas, of conspiring to commit aggravated sexual assault, violating a lawful general order (fraternization), making false official statements (two specifications), committing aggravated sexual assault, and committing wrongful sexual contact in

violation of Articles 81, 92, 107, and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, 907, and 920.[1] The members sentenced the appellant to confinement for 42 months and a dishonorable discharge.

Prior to authentication of the record, the defense filed a motion with the military judge seeking a new trial pursuant to RULE FOR COURTS-MARTIAL 1210, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), alleging newly discovered evidence and fraud on the court-martial. The military judge granted the defense motion and ordered a new trial. On 31 December 2013, we granted an appeal by the Government pursuant to Article 62, UCMJ, holding that the military judge abused her discretion in finding witness statements to be newly discovered evidence or, in the alternative, fraud on the court-martial.[2] The court vacated the ruling of the military judge and returned the record of trial to the Judge Advocate General for further proceedings not inconsistent with that opinion. The convening authority (CA) approved the sentence as adjudged, and, except for the dishonorable discharge, ordered it executed. Now that post-trial processing is complete, we review the case under Article 66, UCMJ.[3]

The appellant raises four assignments of error (AOEs): (1) that a cumulative effect of evidentiary errors allowed the Government's primary witness to mislead the members;[4] (2) that the appellant received ineffective assistance of counsel; (3) that the charges were unreasonably multiplied; and, (4) that the CA's instruction restricting eligibility for court-martial membership frustrated the appellant's right to a properly convened court-martial.

---

[1] As the offense allegedly occurred on 26 July 2011, the version of Article 120, UCMJ, in effect from 1 Oct 2007 through 27 June 2012 applies.

[2] *United States v. Hoyes*, No. 201300303, 2013 CCA LEXIS 1075, unpublished op. (N.M.Ct.Crim.App. 31 Dec 2013), *rev. denied,* 73 M.J. 264 (C.A.A.F. 2014).

[3] On 4 June 2015, the court released an opinion in which we set aside the findings and sentence and returned the record of trial to the Judge Advocate General for remand to an appropriate CA with a rehearing authorized. The Government filed a Motion for *En Banc* Reconsideration on 6 July 2015, which was denied on 29 July 2015. However, by Order dated 29 July 2015, the panel determined that it would reconsider its 4 June 2015 opinion based on newly attached documents. The court's 4 June 2015 opinion is hereby withdrawn and replaced with this opinion.

[4] While this was the stated AOE, the alleged error involves testimony of several Government witnesses.

We find merit in the appellant's third AOE and grant relief in our decretal paragraph. After carefully considering the record of trial and the parties' submissions, we are convinced that following our corrective action the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains. Arts. 59(a) and 66(c), UCMJ.

## Background[5]

The appellant was assigned to USS DWIGHT D. EISENHOWER (CVN 69). On 26 July 2011, the ship made a port call to Mayport, Florida. A number of Sailors from the ship's supply department, to include the appellant, Culinary Specialist First Class TG (TG), Culinary Specialist Seaman SF (SF), Culinary Specialist Seaman VC (VC), and Culinary Specialist Seaman PV (PV), went into town on liberty that evening. During the evening, SF and VC drank to excess in celebration of VC's 21st birthday. At some point during the evening, the appellant and VC flirted and discussed having sexual intercourse later that evening.

After drinking together in one of the local bars, SF, VC, PV, TG and the appellant shared a cab back to a local hotel. Once they arrived, the group, with the exception of SF, went to VC's hotel room. SF went to the room across the hall. A short time later, two other Sailors from the room across the hall assisted SF into VC's room and laid her down on the floor, fully clothed and visibly drunk. She remained there on the floor while VC and the others continued drinking and socializing. After a few minutes, VC left the room and went outside the hotel to give money to a friend for cab fare.

When she came back to her room, VC saw the appellant and SF on one of the two beds engaged in sexual intercourse. Soon after observing this, VC engaged in sexual intercourse and fellatio with PV on the other bed. The appellant and PV then switched places and partners. The appellant went over to the bed where VC lay and engaged in sexual intercourse with her, while PV went to the bed where SF lay and proceeded to do the same with her. After these encounters concluded, VC asked SF if

---

[5] This court described the facts surrounding the charged offenses in great detail in its 31 December 2013 opinion. *Id*. at *2-5. They are repeated here only to the extent necessary to review the specific assignments of error currently before this court.

she was "okay" and "[knew] what's going on"; SF replied "yes" and "I just want to go to sleep."[6]

SF soon fell asleep on one of the beds and VC went to another room across the hall where she remarked to several others that she saw the appellant and SF having sex. After a short while, VC went back to her hotel room where she was met by the appellant at the door. When VC entered her room, she saw SF on top of TG in what appeared to be the act of sexual intercourse. PV was asleep in the other bed. The appellant then told VC to be quiet and pulled her into the bathroom. There the two kissed and VC proceeded to perform fellatio on the appellant. After several minutes, VC stepped out of the bathroom into the room. SF was asleep on the bed and TG was pulling on a pair of pants. TG, PV, and the appellant left the room and VC went to sleep.

Ultimately, the court-martial found the appellant guilty of conspiring with TG to commit an aggravated assault, committing an aggravated sexual assault on SF, and committing wrongful sexual contact against SF, as well as the false official statement and fraternization charges noted above.

Additional facts necessary to address the assignments of error are provided below.

## Cumulative Error

The appellant first claims that the cumulative effect of three errors led the members to wrongfully convict the appellant. These alleged errors are that the military judge erroneously: (1) allowed the trial counsel to lead her own witness on key testimony and improperly refresh that witness' memory; (2) permitted the Government's expert to inaccurately define "incapacity;" and (3) admitted two in-court identifications by witnesses lacking sufficient bases to do so.

The cumulative effect of all errors, plain or preserved, is reviewed *de novo*. *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011). Under the cumulative-error doctrine, reversible error may exist when "'a number of errors, no one perhaps sufficient to merit reversal, in combination necessitate the disapproval of a finding.'" *Id*. (quoting *United States v. Banks*, 36 M.J. 150, 170-71 (C.M.A. 1992). We will reverse only if we find the cumulative errors denied appellant a fair trial.

---

[6] Record at 492-93.

*Id.*  We start by analyzing each alleged error in turn, noting that we review a military judge's evidentiary rulings for an abuse of discretion, that is, whether the "challenged action [is] arbitrary, fanciful, clearly unreasonable, or clearly erroneous."  *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citation and internal quotation marks omitted).

1. *VC's Testimony*

"Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the testimony of the witness."  MILITARY RULE OF EVIDENCE 611(c), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).  A review of VC's direct examination reveals a significant number of leading questions by the trial counsel.  However, this review also shows the great majority of these leading questions to be on minor issues, while VC's testimony on key points came in response to non-leading questions.  When trial defense counsel objected to the use of leading questions, the military judge properly sustained the objection.[7]  Later in the examination, the military judge *sua sponte* reminded the trial counsel that she was conducting direct examination.[8]  Also, when the defense objected to the Government's improper attempt to refresh VC's memory, the military judge sustained the objection and admonished the trial counsel to move on.[9]  Taken as a whole, we conclude the military judge maintained proper control over the elicitation of testimony, and did not abuse her discretion in allowing, in the absence of objection, admission of those statements SF provided in response to leading questions.

2. *Expert testimony*

In response to the trial counsel's question regarding the effects of alcohol on cognitive function, the Government's psychiatric expert testified as follows:

> [I]t's a sliding scale, from somebody who's not drinking alcohol or has had a few drinks where they're functioning, essentially, like they normally would function.  They can go ahead and operate a car. . . . All the way through to where we know somebody's impaired because they can't even stand up, they're intoxicated to the level they can't even function.

---

[7] Record at 489.

[8] *Id.* at 536.

[9] *Id.* at 541.

And these are the chronic alcoholics who, after 10
DUI's, they go and get out their keys and get in the
car and drive.  They're not taking in all the
information they need to make a wise choice.  They're
not making decisions that you and I would.  And they
would probably think, in the light of day, that that
would [sic] be a good choice because police and jail
are bad.  But they still make these uninformed choices
and this is because the information they're bringing
in, they're not processing all the, weighing all the
truths and cons, okay, all the goods and bads of their
decisions.  They may be willing to make a choice, but
they're not able to make an informed decision, and
therefore they're not able to make valid choices
whenever they're at a level of intoxication that would
impair bringing in and weighing all the balanced
choices.[10]

The appellant claims this testimony, combined with the expert's
later estimation of SF's blood-alcohol level at the time of the
assault, amounted to "an incorrect legal definition of
'substantial incapacitation.'"[11]  We disagree.

First, we do not interpret the expert's testimony to be an
attempt to define "substantial incapacitation."  Rather, the
expert was merely describing the effects of alcohol on the
decision-making process, and providing the members a reasonable
approximation of the victim's level of intoxication.  This
testimony in no way contradicted the military judge's
instructions, wherein she defined "substantial incapacitation"
as:

that level of mental impairment due to the consumption
of alcohol, drugs, or similar substance, while asleep
or unconscious, or for other reasons which render the
alleged victim unable to appraise the nature of the
sexual conduct at issue, unable to physically
communicate unwillingness to engage in the sexual
conduct at issue, or otherwise unable to make or
communicate competent decisions.[12]

---

[10] *Id*. at 644-45.

[11] Appellant's Brief of 20 Jan 2015 at 19.

[12] Record at 768.  The military judge reinforced this language regarding
substantial incapacitation when instructing the members as to consent.  *Id*.
at 768-69 and 772.

6

"Absent evidence to the contrary, the members are presumed to follow the military judge's instructions." *United States v. Ashby*, 68 M.J. 108, 123 (C.A.A.F. 2009) (citing *United States v. Jenkins*, 54 M.J. 12, 20 (C.A.A.F. 2000)).  We find nothing in the record to undermine this presumption.  The expert did not provide an erroneous definition, and the trial counsel, when discussing substantial incapacitation during closing argument, made no mention of the expert.  In fact, the trial counsel specifically referenced the judge's instructions.[13]

3. *In-court identification*

The appellant further claims that the in-court identification of the appellant by two witnesses was based on hearsay, and not personal knowledge.  We find this claim to be without merit.  The record indicates the first witness personally saw the appellant in the room on the night in question and later recognized the appellant in uniform and read his name tape.  The second witness, under cross-examination, admitted that her identification of the appellant was not based on her having recognized the appellant in the room, and that she only knew his name because VC told her.  She also testified on re-direct that she did not "get a good look at his face" that night.[14]  Given this evisceration of the second witness' identification, we cannot believe it played any role in the member's verdict.

As we find none of these issues alone constitutes error, we certainly do not find their combined effect denied the appellant a fair trial.

## Ineffective Assistance of Counsel

The appellant alleges that the trial defense team was ineffective in its representation at court-martial by failing to offer evidence of SF's motive to fabricate or to impeach her with evidence that she sought out the appellant on numerous occasions after making the allegations against him.

The Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  The Court of Appeals for the Armed Forces (CAAF) has applied this standard

---

[13] *Id.* at 790.

[14] *Id*. at 592.

to military courts-martial, noting that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J 360, 361 (C.A.A.F. 2010) (citations omitted).  In order to show prejudice under *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Counsel are presumed to be competent. *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Therefore, our inquiry into an attorney's representation must be "highly deferential" to the attorney's performance and employ "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S.  at 689.  The appellant has the heavy burden of establishing a factual foundation for a claim of ineffective representation. *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000).  Strategic or tactical decisions made by a trial defense counsel will not be second-guessed on appeal unless the appellant shows specific defects in counsel's performance that were unreasonable under prevailing professional norms. *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009).  The appellant's burden of proof requires that he provide a specific, particularized statement of the errors or deficient performance alleged and that he support his claim by evidence and facts.  Bare allegations based on speculation, conjecture, and conclusory comments will not suffice. *United States v. Jones*, 39 M.J. 815, 818 (A.C.M.R. 1994).

The CAAF has applied a three-prong test to determine if the presumption of competence has been overcome:

   (1) Are the allegations true; if so, "is there a
   reasonable explanation for counsel's actions[?]"

   (2) If the allegations are true, did defense counsel's
   level of advocacy fall "measurably below the
   performance ordinarily expected of fallible lawyers?"

   (3) If defense counsel was ineffective, is there a
   "reasonable probability that, absent the errors,"
   there would have been a different result?

*United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991) (citations and internal punctuation omitted). The court "looks at the questions of deficient performance and prejudice de novo." *United States v. Gutierrez*, 66 M.J. 329, 330-31 (C.A.A.F. 2008) (citations omitted).

The appellant claims his trial defense counsel should have used the fact that SF was in a romantic relationship with, and living with, another woman to show that SF had a motive to lie regarding her sexual activity with the appellant. The trial defense counsel was aware of these facts, and had requested the girlfriend's presence at trial. However, the appellant's defense counsel neither called her as a witness nor sought to question SF on the relationship. The extensive colloquy between the military judge and the trial defense counsel makes clear that the defense team fully examined the possibility of impeaching SF with this romantic relationship, and chose not to do so.[15] We will not second-guess what was obviously a thoroughly-considered strategic decision not to pursue this line of inquiry.

Whether there is merit in the appellant's second allegation of deficient counsel performance is less clear. The appellant claims that SF, despite having been issued an order to stay away from the appellant, continued to seek out the appellant after making the allegations against him. The appellant claims this behavior did not stop until after he reported it several times to his chain of command. We do not know why the trial defense counsel did not seek to impeach SF with her post-allegation behavior. We need not, however, determine whether the lack of impeachment on this point was error. "'[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *United States v. Datavs*, 71 M.J. 420, 424-25 (C.A.A.F. 2012) (quoting *Strickland*, 466 U.S. at 697).

As the Government's theory was that SF was substantially

---

[15] During this exchange the military judge specifically asked whether there was some "implication here that somehow the girlfriend was jealous, [and] there's a motive to lie or something?" Record at 19. The trial defense counsel responded, "It's not, we are not going to attempt to use that at trial, Your Honor." *Id*. at 20.

incapacitated and unable to remember the alleged assaults, it necessarily built its case not around SF's testimony, but on the testimony of the numerous other witnesses present that night.[16] Any post-allegation behavior on SF's part does nothing to undercut the testimony of these other witnesses. SF's credibility simply was not an important piece of the Government's case.[17] Accordingly, we find that there is no reasonable probability that, had the trial defense counsel sought to impeach SF with her post-allegation conduct – or with her romantic relationship, for that matter - the outcome of the trial would have been different.

## Unreasonable Multiplication of Charges

In his next assignment of error, the appellant avers that the wrongful sexual contact and aggravated sexual assault specifications under Charge IV constitute an unreasonable multiplication of charges. He further avers that the two specifications under Charge III alleging the making of false official statements represent a similar unreasonable multiplication. We agree and conclude that the appellant should not stand convicted of all the specifications under Charges III and IV.

The prohibition against unreasonable multiplication of charges allows this court to address prosecutorial overreaching by imposing a standard of reasonableness. *United States v. Paxton*, 64 M.J. 484, 490 (C.A.A.F. 2007); *United States v. Roderick*, 62 M.J. 425, 433 (C.A.A.F. 2006). In addressing whether the Government has unreasonably multiplied charges, we apply a five-part test: (1) did the accused object at trial; (2) is each charge and specification aimed at distinctly separate criminal acts; (3) does the number of charges and specifications misrepresent or exaggerate the appellant's criminality; (4) does the number of charges and specifications unreasonably increase the appellant's punitive exposure; and, (5) is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges? *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001). When conducting a *Quiroz* analysis, we are

---

[16] SF testified she did not remember anything between being at a local bar and waking the next morning to several witnesses telling her about the previous evening's events. She provided no testimony regarding what happened at the hotel on the night in question. Record at 607-08.

[17] Although SF's credibility was not central to the Government's case, the trial defense counsel did put on evidence of SF's character for untruthfulness. *Id*. at 726, 735, and 740. The Government offered no evidence to rebut this.

mindful that "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." RULE FOR COURTS-MARTIAL 307(c)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). Furthermore, "when a 'panel return[s] guilty findings for [multiple] specifications and it was agreed that these specifications were charged for exigencies of proof, it [is] incumbent' [upon the military judge] either to consolidate or dismiss [the contingent] specification[s],' not merely merge them for sentencing purposes." *United States v. Thomas*, 74 M.J. 563, 568 (N.M.Ct.Crim.App. 2014) (quoting *United States v. Elespuru*, 73 M.J. 326, 329-30 (C.A.A.F. 2014) (additional citation omitted)).

Given the facts of this case, our analysis of the *Quiroz* factors may be abbreviated for these charges. While trial defense counsel did not object to the members considering both specifications under Charge III, the record is clear – and the Government concedes – the two statements were made during a single interview with agents of the Naval Criminal Investigative Service (NCIS), in response to questions aimed at a single course of action. First, the appellant allegedly told NCIS he "did not have sex with [SF] that night."[18] He then denied having "entered any of the hotel rooms except [his] own at the Best Western" that night.[19] The Government concedes that the two specifications were charged to address contingencies of proof, and should be consolidated. We agree with the appellant that these specifications represent an unreasonable multiplication of charges, and will consolidate the two specifications in our decretal paragraph.

At trial, the appellant objected to having the members consider both specifications under Charge IV. The Government, conceding that the two specifications were pleaded in the alternative to account for contingencies of proof, agreed that, "if [the members] convict on both, then certainly one could be dismissed by the judge, before sentencing."[20] The military judge then stated he would consider instructing the members that they could "choose to acquit on both, and they can choose to convict of one but they may not choose to convict on both[.]"[21] However, no such instruction was given. Instead, after a finding of

---

[18] Charge Sheet.

[19] *Id*.

[20] Record at 690.

[21] *Id*. at 690-91.

11

guilty to both specifications, the military judge merged, without defense objection, the two specifications for sentencing.

In its Answer, the Government concedes that the two specifications under Charge IV should be consolidated.  We agree that separate convictions for these two specifications cannot stand.  Accordingly, we will dismiss Specification 2 of Charge IV, as the conduct alleged in that specification is logically encompassed by the actions alleged in Specification 1.[22]

## Members Selection

In July 2008, Commander, Naval Air Force Atlantic (COMNAVAIRLANT) issued an instruction[23] to subordinate commands establishing the procedure for nominations of prospective court-martial members.  That instruction directed each subordinate command to provide a certain number of nominees in the grades of O-5, O-4, "LT [Lieutenant] or Below" and "Enlisted (E7/E8/E9)."[24] The instruction did not call for nominees below E-7, regardless of how junior a particular appellant may be, and did not call for anyone O-6 or above.[25]

The appellant avers that members below the pay grade of E-7, above the pay grade O-5, and all warrant and chief warrant officers were impermissibly and systematically excluded from the nomination process by the CA.

We review claims of error in the selection of court-martial members *de novo.  United States v. Kirkland,* 53 M.J. 22, 24 (C.A.A.F. 2000).  We look at three primary factors to determine whether an impermissible member selection has taken place:

1. Improper motive in packing a member pool;

---

[22] This is not to say the two specifications are multiplicious, or meet the elements test of *United States v. Teters*, 37 M.J. 370, 375-76 (C.A.A.F. 1993).  We need not review this issue through a multiplicity lens, as we reach the same result by finding an unreasonable multiplication of charges.

[23] COMNAVAIRLANT Instruction 5813.1H, 29 Jul 2008 (Supp. Clemency Request of 15 May 2014, encl. (1).)

[24] *Id.* at 2.

[25] It is unclear, as the Government concedes, whether the "LT or Below" language intended only O-1 to O-3 nominees or permitted nomination of warrant and chief warrant officers.  Appellee's Brief of 20 Apr 2015 at 57 n.4.

12

2. Systematic exclusion of potential members based on rank or other impermissible variable; and,

3. Good faith attempts to be inclusive and open the court-martial process to the entirety of the military community.

*United States v. Dowty*, 60 M.J. 163, 171 (C.A.A.F. 2004). If either of the first two criteria is present, the process is impermissible. *Id.* These criteria are not only considered in the actual panel selection process, but also in the process of presenting nominations to the CA. *United States v. Roland*, 50 M.J. 66, 69 (C.A.A.F. 1999).

In a case of systematic exclusion of members by rank, it is the responsibility of the defense to establish the improper exclusion. *Kirkland*, 53 M.J. at 24. Once improper exclusion has been shown, the burden shifts to the Government "to demonstrate that the error did not 'materially prejudice the substantial rights of the accused.'" *Dowty*, 60 M.J. at 173 (quoting Art. 59(a), UCMJ).

The Government urges us to find waiver in the appellant's failure to raise this issue before trial. *See* R.C.M. 912(b)(3). While such an objection "ordinarily . . . must be made before trial," *Dowty*, 60 M.J. at 174 (citation and interal quotation marks omitted), we may "pass[] over the procedural deficiency to reach the substance of the issue." *Id*. The seriousness of the alleged error and the absence of any evidence that the appellant was aware of the COMNAVAIRLANT instruction prior to trial compel us to address the appellant's claim.

While we find the appellant has established that the instruction improperly excluded potential members from the selection process on the basis of rank,[26] the question remains whether that improper nomination process materially prejudiced the appellant. *See United States v. Ward*, 74 M.J. 225 (C.A.A.F. 2015) (holding similar use of COMNAVAIRLANT Instruction 5813.1H to be harmless error). In reviewing this case, including affidavits from the CA and his staff judge advocate (SJA) we find: (1) no evidence that the errant instruction was issued with an improper motive; (2) no evidence that the CA had an improper motive when detailing the members assigned to the

---

[26] While the CA indicates he understood it was within his discretion "to consider and select any member in [his] command," Affidavit of VADM Ted N. Branch, USN, of 26 Jun 2015, this does not cure the defect in the *nomination* process. Government Motion to Attach of 6 Jul 2015.

appellant's court-martial; (3) the CA was a person authorized to convene a general court-martial; (4) the CA was properly advised of his Article 25 responsibilities, and that he could pick any member of his command, not just those who had been nominated; (5) the court members were personally chosen by the CA from a pool of eligible candidates; and, (6) the court members all met the criteria in Article 25, UCMJ. Under these circumstances, we are convinced that the appellant's case was heard by a fair and impartial panel, and that the error in this case was harmless. *See United States v. Bartlett*, 66 M.J. 426, 431 (C.A.A.F. 2008).[27]

## Sentence Reassessment

When setting aside or consolidating specifications, this court will normally reassess the sentence in light of those changes. In this case, however, the members were specifically instructed that "the offenses charged in Specification 1 and Specification 2 of Charge III, are one offense for sentencing purposes. . . . Likewise, the offenses charged in Specification 1 and Specification 2 of Charge IV, are one offense for sentencing purposes."[28] As we are convinced that the unreasonably multiplied charges did not affect the sentencing decision, we see no need to reassess the sentence.

---

[27] In its initial Answer of 20 April 2015, the Government provided no evidence of how the member selection process was conducted in this case. Accordingly, having no information upon which we could resolve the *Bartlett* factors in the Government's favor, this court found that the Government had failed to meet its burden of proving that the improper exclusion of members was harmless. Thirty days after the court issued its 4 June 2015 opinion, the Government filed a motion for reconsideration and a motion to attach affidavits from the CA and his SJA. These motions contained neither an explanation as to why the affidavits (nearly identical to those filed in other cases with the same Article 25, UCMJ, issue) were not provided with its Answer, nor an acknowledgement that the Government bore a burden of proof in this matter. This sequence of events, due either to sloppiness or some inscrutable design, wasted precious judicial resources. Furthermore, the Government's motion for *en banc* reconsideration is noteworthy for its misunderstanding of the applicable case law. We are, therefore, compelled to repeat the applicable rule: Once improper exclusion of potential members has been shown, *the burden shifts to the Government "to demonstrate that the error did not 'materially prejudice the substantial rights of the accused.'" Dowty*, 60 M.J. at 173 (quoting Art. 59(a), UCMJ) (emphasis added). Nothing in *Ward,* changes this. To the contrary, our superior court clearly based its decision in that case on *what the Government had shown or established*, even noting "there exists no remedy for [such a] violation *if the government shows it was harmless." Ward*, 74 M.J. 225, slip op. at 11 n.5 (emphasis added).

[28] Record at 902.

14

## Conclusion

The finding of guilty as to Specifications 1 and 2 of Charge III are hereby consolidated into a single specification to read as follows:

> In that Culinary Specialist First Class Petty Officer Lamont E. Hoyes, U.S. Navy, USS DWIGHT D. EISENHOWER (CVN 69), on active duty, did, on board Naval Station Norfolk on or about 7 March 2012, with intent to deceive, make to Special Agent Jennifer Lynch, Naval Criminal Investigative Service, official statements, to wit: "I did not have sex with [SF] that night" and "That night I never entered any of the hotel rooms other than my own at the Best Western," or words to that effect, which statements were totally false, and were then known by said Culinary Specialist First Class Petty Officer Lamont E. Hoyes, U.S. Navy, to be so false.

The finding of guilty as to Specification 2 of Charge IV is set aside, and that specification is conditionally dismissed pending finality of direct review pursuant to Article 71(c), UCMJ, 10 U.S.C. §871(c).

With these modifications, the findings and the sentence are affirmed.

Senior Judge BRUBAKER and Judge MARKS concur.


For the Court



R.H. TROIDL
Clerk of Court