# UNITED STATES

### v.

**Nilo V. PREUSS, 501 98 2672, Engineman Fireman (E–3), U.S. Naval Reserve.**

**NMCM No. 90 3403.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 11 July 1990.

Decided 13 Dec. 1991.

LT R.M. Medeiros, JAGC, USNR, Appellate Defense Counsel.

LT Stephen Ponticiello, JAGC, USNR, Appellate Government Counsel.

Before STRICKLAND, Senior Judge, and ORR and MOLLISON, JJ.

ORR, Judge:

Contrary to his pleas, the appellant was found guilty of stealing a military identification card and a $900.00 check from Fireman David Torres on board USS GERMANTOWN (LSD–42), altering the identification card by replacing Fireman Torres' photograph with one of his own, and uttering the $900.00 check by forging the signature of David Torres as an endorsement in violation, respectively, of Articles 121, 134, and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 934, and 923. He was sentenced by the military judge sitting alone to confinement for 7 months, forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge.

The Government's evidence against the appellant was both substantial and convincing. The victim of the theft, Fireman Torres, testified that he received a refund check, dated 18 September 1989, for $900.00 from a local car dealer after he changed his mind about purchasing an automobile. He did not cash the check immediately but returned to his ship and

went to sleep with the check and his ID card in his wallet in his clothes, which he left in a pile on the deck by his bunk. His bunk is in an open-bay berthing compartment which he shares with the appellant and 20 to 30 other shipmates. When he woke the next morning he discovered his wallet was missing. He reported the theft to his Division Chief and called the car dealer to report the loss of the check.

On 22 September he received a second $900.00 check from the car dealer, and he went to a 24–hour check cashing facility to cash the check. Coincidentally, the cashier at the facility remembered cashing a $900.00 check for a "David Torres" the day before and mentioned it to Fireman Torres.

A few days later, Fireman Torres received a telephone call from the car dealer reporting that both checks had been cashed at the same facility. Fireman Torres went back to the facility that day and was shown a check cashing card bearing his name and a photocopy of a military identification card in his name which had been used to cash the first $900.00 check on 21 September. Fireman Torres testified that the photograph on the ID card was not a photo of him but of the appellant. He returned to the ship and reported the matter to his Division Chief.

The cashier from the check cashing facility remembered the person who cashed the first check and identified the appellant in a photo line-up conducted about 2 months before trial. She also identified the appellant at trial. In addition, she testified that the facility keeps no record of the time during the day that any check is cashed and she had no recollection of the time, herself.

A handwriting expert for the Government analyzed the endorsement on the first check and compared it with handwriting exemplars from the appellant and with the signature of the appellant on documents in the appellant's service record. He testified that although he was not positive the appellant had made the endorsing signature, he thought it was very probable.

After the presentation of the foregoing evidence from the Government's case-in-

chief, the court recessed for 8 days and reconvened on 28 June 1990. The Government then rested, and the presentation of the defense case was rescheduled for 11 July 1990. It appears that on 28 June, the appellant's civilian defense counsel first notified the trial counsel that the appellant would be using the defense of alibi, and he provided the trial counsel with a list of defense witnesses. Two of those witnesses were identified as potential alibi witnesses. The list does not otherwise identify the specific place or places the appellant was supposed to be, but the trial counsel stated that the civilian defense counsel indicated that the appellant had duty aboard ship on 21 September, the day the first check was cashed. When the court reconvened on 11 July, the civilian defense counsel stated that he only wanted one of the two alibi witnesses and that witness would also testify that not only did the appellant have duty on 21 September but that the witness drove the appellant to his home off-base and stayed with him the entire evening.

■ The trial counsel complained to the military judge that the defense had violated Rule for Courts–Martial (R.C.M.) 701(b)(1), Manual for Courts–Martial, United States, 1984, (M.C.M., 1984), in that: (1) he had not been informed before trial of an alibi defense; (2) when he was informed of the defense, he had already completed the presentation of the Government's case-in-chief; (3) the initial notification only informed him that the appellant claimed to have been on duty aboard ship when the check was cashed; and, (4) the Government was prejudiced by the change in the nature of the alibi by the inability to investigate and rebut the appellant's new claim that he was at his off-base home.

R.C.M. 701(b)(1) provides:

*Notice of alibi.* The defense shall notify the trial counsel before the beginning of trial on the merits of its intent to offer a defense of alibi. Such notice by the defense shall disclose the specific place or places at which the defense claims the accused to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the

accused intends to rely to establish such alibi.

The military judge found a violation of R.C.M. 701(b)(1) and precluded the appellant from presenting the alibi in the following statement:

> [T]here was certainly ample time to notify the prosecution of this alibi, and at this late juncture I am concluding that because of the failure of notice and the fact that it's put the government in the position of not being able to—to investigate and rebut that particular alibi and the fact that this case has been continued already several times, I'm going to preclude you from presenting that alibi....

Record at 129. That ruling is either the basis for or an integral part of the appellant's two assignments of error.[1]

The civilian defense counsel proceeded to present the defense case-in-chief by calling a second handwriting expert, who testified that he was unable to reach any conclusion concerning the endorsing signature on the 18 September check because he did not see the check until after it had been tested for fingerprints which had smudged the signature. During cross-examination, however, he testified that it was probable that the appellant had printed the identifying information that appeared below the signature in the endorsement.

The appellant was the only other defense witness, and he testified that he had never seen the original check before, that he came home from work with his friend, and because his wife was expecting a baby and they did not have a car, the friend stayed with them that evening in case his wife needed transportation. He also testified that, while he had never cashed a check at the facility in question, it was about 5–10 minutes from his home. He maintained that he would have had to drive there, and although he disclosed during cross-examination that he had borrowed his friend's car during September, he maintained that he did not borrow it that evening.

The appellant also testified that he had several small photographs taken during the summer of 1989 because he was filing a citizenship application. He said he kept a number of those photographs on his bunk, and that he noticed shortly after he was accused of these offenses that several of these photos were missing.

In making his ruling on the failure of the civilian defense counsel to provide adequate notice of the defense of alibi, the military judge considered the options available to him under R.C.M. 701(g)(3), which provides, in relevant part:

> If at any time during the court-martial it is brought to the attention of the military judge that a party has failed to comply with this rule, the military judge may take one or more of the following actions:
>
> (A) Order the party to permit discovery;
>
> (B) Grant a continuance;
>
> (C) Prohibit the party from introducing evidence or raising a defense not disclosed; and
>
> (D) Enter such other order as is just under the circumstances.

The Discussion following R.C.M. 701(g)(3) also provides:

> Factors to be considered in determining whether to grant an exception to exclusion under subsection (3)(C) include: the extent of disadvantage that resulted from a failure to disclose; the reason for

---

1. I. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO 1) CIVILIAN DEFENSE COUNSEL'S FAILURE TO GIVE GOVERNMENT NOTICE OF A POSSIBLE ALIBI DEFENSE PURSUANT TO R.C.M. 701(b)(1); 2) CIVILIAN DEFENSE COUNSEL'S FAILURE TO INVESTIGATE, PREPARE, AND PRESENT APPELLANT'S SOLE DEFENSE OF ALIBI; 3) CIVILIAN DEFENSE COUNSEL'S INEFFECTIVE PRETRIAL INVESTIGATION AND PRETRIAL PREPARATION AND PRESENTATION OF A DEFENSE EXPERT WHO WAS MORE USEFUL AS A WITNESS FOR THE PROSECUTION; AND 4) CIVILIAN DEFENSE COUNSEL'S FAILURE TO OBJECT TO EVIDENCE OFFERED UNDER M.R.E. 608(b) OR TO REHABILITATE APPELLANT DURING REDIRECT ON THE EVIDENCE.

II. THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE PRECLUDED APPELLANT'S PRESENTATION OF AN ALIBI WITNESS.

the failure to disclose; the extent to which later events mitigated the disadvantage caused by the failure to disclose; and any other relevant factors.

While we are reluctant to second-guess a trial judge's rulings, we are also faced with a countervailing consideration that any ruling that excludes otherwise admissible evidence in a process that is supposed to find the truth and provide justice should be reserved for only the most egregious circumstances.[2] *See United States v. Coffin,* 25 M.J. 32 (C.M.A.1987); *United States v. Townsend,* 23 M.J. 848 (A.F.C.M.R.), *pet. denied* 25 M.J. 369 (C.M.A.1987); *cf. United States v. Trimper,* 28 M.J. 460 (C.M.A. 1989) (trial counsel's intentional failure to disclose evidence does not inevitably require sanction that evidence be excluded); *United States v. Murphy,* 29 M.J. 573 (A.F.C.M.R.1989) (trial counsel's failure to disclose testimony of rebuttal witness did not require suppressing testimony of the witness); *United States v. Stewart,* 29 M.J. 621 (C.G.C.M.R.1989) (military judge abused discretion in excluding documentary evidence offered by defense in surrebuttal for failure of defense to disclose since even if there was a duty to disclose, defense counsel had only received the evidence the day it was offered); *United States v. Walker,* 25 M.J. 713 (A.C.M.R. 1987) (military judge erred in excluding testimony of defense psychiatrist on issue of mental responsibility and by imposing requirement that notice of testimony had to be given at the time motions were entered).

Among the factors considered by the military judge, the prejudice to the Government identified by the trial counsel was the inability to investigate and rebut the testimony of the witness. Given the fact that the check-cashing facility was open 24 hours a day and neither the records of the facility nor the cashier could recall when the check was negotiated, an effective alibi would have to account for an entire 24–hour period.[3] We have some doubt whether one witness could effectively account for the appellant's whereabouts during an entire 24–hour period, and the trial counsel conceded that he was already prepared to rebut testimony concerning the appellant's duty obligations aboard ship. Certainly as to that portion of the alibi, the trial counsel's articulation of prejudice had no application.

Even more significantly, it was never ascertained why a continuance could not have been employed to allow the Government additional time to investigate the new testimony.[4] The military judge mentioned the delays that had already occurred in getting the case to trial, but he also noted that those delays were essentially the result of the movements and operating schedule of the ship to which many of the witnesses were attached and were not attributable to the accused or his counsel. It also appears that despite the defense's notification to the trial counsel two weeks earlier, the witness in question had been allowed to go on leave and would not return until 12 July, the following day. In addition, the trial was being conducted before the military judge sitting alone: there were no members to be inconvenienced or annoyed by repeated delays.

---

2. "Few rights are more fundamental than that of an accused to present witnesses in his own defense.... Indeed, this right is an essential attribute of the adversary system itself." *Taylor v. Illinois,* 484 U.S. 400, 408, 108 S.Ct. 646, 652, 98 L.Ed.2d 798, 810 (1988) (citation omitted).

3. It may have been possible for the defense to narrow this period in several ways, such as through the testimony of the cashier as to her actual working hours on the day in question or by the inference that the check was cashed outside normal working hours for the car dealership because the cashier testified that the facility routinely contacts the issuer of checks that are for amounts as large as the one in this case but it could not be done if the issuer is not available at the time the check is presented. Nevertheless, the cashier was not asked about her working hours on that day, and no reference was made in this context to the failure to contact the car dealership.

4. Unfortunately, the military judge did not make specific findings of fact beyond his conclusions that the Government did not have notice of the alibi, that the information provided about the alibi was inadequate, and that the civilian defense counsel had the obligation to advise the Government after he talked with the witness in question. Record at 127.

As to the reason for the failure to disclose, the military judge made no specific statement concerning this factor, but he did comment that he could not "discern any good reason for [the civilian defense counsel] having failed to disclose what the alibi was going to be...." Record at 129. At one point, the civilian defense counsel stated that he thought that the detailed counsel had notified the trial counsel of the alibi defense before she was excused by the appellant. He also indicated that he did not discover this new aspect of the alibi until he talked to the witness after the ship had returned to port the day after the 28 June session. He also stated that he assumed the trial counsel would discover that aspect of the witness' potential testimony when the trial counsel interviewed the witness about the earlier part of the day. While we can appreciate the annoyance of trial counsel at this lack of diligence and organization by the civilian defense counsel, there is no indication that the civilian counsel deliberately tried to mislead the trial counsel, and we conclude that he was not acting in bad faith.

■ Based upon our evaluation of the factors revealed in the record, we find that the military judge abused his discretion by excluding the testimony of the defense's alibi witness. The question remains whether the appellant was prejudiced by the error. *Townsend*, 23 M.J. at 851; *see also United States v. Saa*, 859 F.2d 1067 (2nd Cir.1988) (erroneous exclusion of testimony of two alibi witnesses under Fed.R.Crim.P. 12.1 was harmless);[5] *cf. United States v. Barron*, 575 F.2d 752 (9th Cir.1978) (strength of prosecution's case was a factor justifying the trial court's decision to exclude testimony of alibi witnesses for defense's failure to give timely notice); *United States v. Myers*, 550 F.2d 1036 (5th Cir.1977) (weight of properly admitted evidence of defendant's guilt is a factor to be considered by trial judge in exercising dis-

cretion to exclude testimony of undisclosed witnesses under Fed.R.Crim.P. 12.1), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978).

In attempting to assess prejudice, we are constrained by the fact that the testimony of the witness was never heard and only the most perfunctory proffer was made concerning his expected testimony. Despite this impediment, the strength of the Government's evidence in this case as we have summarized above, including the altered identification card with the appellant's picture, the identification of the appellant by the cashier, and the opinion of the handwriting expert, convinces us that the military judge's error was harmless beyond a reasonable doubt.

■ Our resolution of the foregoing issue also resolves the appellant's first assignment of error because to establish the ineffective assistance of counsel, the appellant must show not only that his counsel's performance was deficient but also that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). Even if we assume the failures cited by the appellant to be deficiencies in the performance of his counsel, we find there is no reasonable probability that the results of the appellant's court-martial would have been different.

Accordingly, the findings of guilty and the sentence as approved on review below are affirmed.

Senior Judge STRICKLAND and Judge MOLLISON concur.

---

5. R.C.M. 701(b)(1) was based on and is essentially similar to Federal Rule of Criminal Procedure 12.1. Part V, Analysis of R.C.M. 701(b), p. A21–30, MCM, 1984. The Federal rule differs from the military rule by requiring the Government to request notice of an alibi defense, *compare* Fed.R.Crim.P. 12.1(a) *with* R.C.M. 701(b)(1), and by failing to list options for the judge if there is a failure to comply with the rule, *compare* Fed.R.Crim.P. 12.1(d) *with* R.C.M. 701(g).