# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, M.C. HOLIFIELD, A.C. RUGH**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**EMMANUEL Q. BARTEE**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201500037**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 3 October 2014.
**Military Judge**: Maj M.D. Zimmerman, USMC.
**Convening Authority**: Commanding General, 1st Marine Logistics Group, Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation**: LtCol D.P. Harvey, USMC.
**For Appellant**: Maj M. Brian Magee, USMC.
**For Appellee**: Capt Cory A. Carver, USMC; Capt Matthew M. Harris, USMC.

**12 January 2016**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge sitting as a general court-martial convicted the appellant contrary to his pleas of one specification of conspiracy to commit larceny, one specification of making a false official statement, and six specifications of larceny, in violation of Articles 81, 107, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, and 921. The military judge sentenced the appellant to 20 months' confinement

and a dishonorable discharge.  The convening authority (CA) approved the sentence as adjudged.

The appellant raises two assignments of error:  (1) the military judge abused his discretion by admitting improperly authenticated prosecution exhibits; and (2) the military judge erred when he ruled a panel composed of senior officers and enlisted members did not violate Article 25 UCMJ, 10 U.S.C. § 825.  We disagree on both counts.

### Admission of Exhibits

Over the course of several months in 2013, the appellant conspired with two civilians to use fraudulent credit cards to steal gifts cards and electronics from Navy and Marine Corps exchanges around San Diego, California.  The Government offered as proof of the larcenies security camera videos of the appellant and his co-conspirators conducting the various transactions; business records of the transactions matched to the time and date of the videos; and bank records showing subsequent debits, or "charge backs," to the exchange's bank accounts after the fraudulent purchases occurred.

After a failed attempt during its case-in-chief to introduce the records of the fraudulent transactions and "charge backs," the Government requested an overnight recess to procure self-authenticating certificates in compliance with MILITARY RULE OF EVIDENCE 902(11), SUPPLEMENT TO MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).  The next morning, the Government offered Prosecution Exhibit 27 authenticating PE 14 through PE 22, Marine Corps Exchange system point-of-sale records of the fraudulent transactions.  After an additional break to correct an error with a second certificate, the Government offered PE 29 authenticating PE 23, Bank of America records of the related "charge backs."

The defense objected to both the trustworthiness of the records and the late notice by the Government of the self-authenticating certificates.  The military judge found the records trustworthy, reliable and otherwise in compliance with both MIL. R. EVID. 803(6) and 902(11).  However, as remedy for the late notice, the military judge ordered a four-hour continuance to permit the defense the opportunity to inspect and challenge the records or certificates.  After the continuance, the defense agreed they had adequate opportunity to investigate and declined any additional continuance.  The military judge permitted

2

significant additional argument on the admissibility of the exhibits then admitted PE 14 through PE 23, PE 27, and PE 29.

The appellant now contends that the military judge should not have admitted the self-authenticating certifications––and by effect the underlying business and bank records––for two reasons:  first, the content of PE 27 and PE 29 failed to comply with the requirements of MIL. R. EVID. 902 in a manner that impacted the underlying records' trustworthiness; and second, the Government failed to give appropriate written notice of PE 27 and PE 29 as required by MIL. R. EVID. 902(11).

**Discussion**

We review a military judge's ruling admitting evidence for an abuse of discretion. *United States v. Hursey,* 55 M.J. 34, 36 (C.A.A.F. 2001).  The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000).

MIL. R. EVID. 902(11) provides that some items of evidence are self-authenticating.  In other words, they require no extrinsic evidence of authenticity to be admitted.  This includes "the original or a copy of a domestic record that meets the requirements of Mil. R. Evid. 803(6)(A)-(C) [the hearsay exception for records of regularly conducted activity], as shown by a certification of the custodian[.]"  MIL. R. EVID. 803(6) excepts from the definition of hearsay, records:

    (A) made at or near the time by someone with
    knowledge;

    (B) kept in the course of regularly conducted activity
    of a uniformed service or business; and

    (C) made as a regular practice of that service or
    business.

The record of regularly conducted activity should not be admitted if the method or circumstances of preparation indicate a lack of trustworthiness.  MIL. R. EVID. 803(6)(E).

Here, both PE 27 and PE 29 comply with the requirements of MIL. R. EVID. 803(6).

The declarant of PE 27, a Senior Point-of-Sale Supervisor for the Marine Corps Exchange system, confirmed that he was the

3

custodian of the records contained in PE 14 through PE 22.  He certified that the information in those records was entered "at or near the time of each respective transaction," that the information was kept under a duty to maintain records of "regularly conducted activities," and that such record keeping was a routine practice of the Marine Corps Exchange system.[1]  PE 14 through PE 22, were records of point-of-sale transactions made at Marine Corps Exchanges, the kinds of records one would expect the Marine Corps Exchange to maintain in the ordinary course of business.  As a result, the records were not facially suspicious and did not inherently evince a lack of trustworthiness.

Likewise, the declarant of PE 29, a Senior Relationship Manager for Bank of America Merchant Services, confirmed that he was the custodian of the records contained in PE 23.  He certified that the information in those records was entered "at or near the time of each respective transaction," that the information was kept under a duty to maintain records of "regularly conducted activities," and that it was "routine practice to keep such records" by Bank of America Merchant Services.[2]

Further, the declarant certified that PE 23 incorporated records from other entities, procured and relied upon by Bank of America to be accurate in the ordinary course of business.[3]  As PE 23 contained "charge back" notifications from Bank of America which would, by necessity, incorporate notifications from other banks or defrauded customers, it did not indicate a lack of trustworthiness that Bank of America would incorporate other entities' records and maintain "charge back" notices in the regular course of its business.

MIL. R. EVID. 902(11) also requires reasonable written notice of the intent to offer such a record and an opportunity to inspect the record and certification before trial, or at a later time if the military judge allows for good cause.

Here, the Government expected a previously called witness to authenticate the underlying transaction records and bank records.  When that witness was unable to lay the appropriate foundation, Government counsel procured the authenticating

---

[1] PE 27 at 1.

[2] PE 29 at 1.

[3] Id.

4

certificates and provided them to the defense the morning the certificates were offered in court.  After the defense objected, the military judge weighed two possible remedies——grant a continuance or prohibit the Government from introducing the evidence——while hewing to this court's guidance in *United States v. Preuss,* 34 M.J. 688, 691 (N.M.C.M.R. 1991), that "any ruling that excludes otherwise admissible evidence in a process that is supposed to find the truth and provide justice should be reserved for only the most egregious circumstances."  He chose to order a continuance, and we find no abuse of discretion in his decision to do so.  Any disadvantage caused by the late notice was remedied by a full and fair opportunity to verify the certificates' provenance.

## Composition of the Panel

Prior to trial, the defense objected to the exclusion of junior members under convening order #1b-13, which appointed only officer members O-4 and above, enlisted members E-8 and above, and no warrant officers.  This panel was detailed after the staff judge advocate (SJA) solicited only these specific categories of senior nominees from subordinate commanders.  The SJA provided the CA draft convening order #1b-13 and the applicable questionnaires for consideration.  The CA then picked those members as were suggested to him by the SJA without modification.  The military judge agreed with the defense's objection finding that the panel selection process improperly excluded potential members based on rank.

Subsequently, the CA was provided a draft, amended convening order, #1c-13, containing the same members previously detailed under convening order #1b-13.  The CA was also furnished with his entire alpha roster of over 8,000 members with instructions that he could substitute any proposed member for someone senior to the accused meeting the Article 25 criteria.  After consideration, the CA detailed the same members stating, "I know these individuals personally and selected them specifically because I am convinced they meet the qualifications for membership."[4]

The following day, the court-martial reconvened under amended convening order #1c-13.  Defense counsel objected, asserting that the Article 25 defect had not been cured as

---

[4] Appellate Exhibit XXXVI at 3.

evidenced by the selection of the same members which still excluded those junior to paygrades O-4 and E-8.

This time the military judge disagreed with the defense, finding that neither the CA nor the SJA had an improper motive or intent to "stack" the member pool to achieve a particular result; that the SJA's original method of soliciting members, albeit improper, was performed in a good-faith intent to adhere to the Article 25 criteria; that any appearance that members had been excluded based on rank had been resolved through the second selection process; and that convening order #1c-13 was created in compliance with Article 25.[5]

In ruling the military judge relied on *United States v. Dowty*, 60 M.J. 163 (C.A.A.F. 2004) (holding that the convening authority may not use additional selection criteria not in Article 25); and *United States v. Kirkland*, 53 M.J. 22 (C.A.A.F. 2000) (holding that an unresolved appearance of unfairness in member selection constitutes grounds for reversal).[6]

The appellant, after consultation with his counsel, requested to be tried by military judge alone. The appellant stated that there were many reasons for making this decision but that the judge's ruling on members selection was a factor in his decision. The military judge ensured the appellant understood his right to trial by members, that he consulted with his counsel before making his election, and that he made his election knowingly and voluntarily. The military judge then accepted the appellant's request for trial by military judge alone.

**Discussion**

Whether a panel is properly selected is a matter of law that this court reviews *de novo*. *United States v. Gooch*, 69

---

[5] The defense introduced, as evidence of a motive to "stack" the panel, a Sergeant Major-authored email, AE XXXVII. The email stated that "[e]vidence is only part of what you need [at a court-martial,]" and opined that members in the ranks of captain, gunnery sergeant, and staff sergeant do not fully understand the impacts of their findings in criminal cases. The Sergeant Major was not within the CA's command and was not stationed on the same coast as the CA. There was no evidence showing the CA or any member of the CA's command received the email. As a result, the military judge found that the email did not present an issue of unlawful command influence. Record at 266-67. Although raised by the appellant in his brief, we find the email irrelevant to our analysis. Appellant's Brief of 5 Jun 2015 at 3.

[6] Record at 276-77.

M.J. 353, 358 (C.A.A.F. 2011). We are bound by the findings of the military judge unless they are clearly erroneous. *United States v. Benedict*, 55 M.J. 451, 454 (C.A.A.F. 2001).

The CA must personally select members who are "best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Art. 25(d)(2), UCMJ. The CA may rely on subordinates to nominate potential court members. *Benedict,* 55 M.J. at 455. However, "[w]hen the request for nominations does improperly include or exclude certain members," the court must "ensure that those actions do not taint the selection by the convening authority." *United States v. Roland*, 50 M.J. 66, 69 (C.A.A.F. 1999).

In a case of systematic exclusion of members by rank, it is the responsibility of the defense to establish the improper exclusion. *Kirkland*, 53 M.J. at 24. Once improper exclusion has been shown, the burden shifts to the Government "to demonstrate that the error did not 'materially prejudice the substantial rights of the accused.'" *Dowty*, 60 M.J. at 173 (quoting Art. 59(a), UCMJ).

Here the military judge found, and we agree, that the initial improper nomination process used by the SJA for convening order #1b-13 did not taint the subsequent selection of court members by the CA for convening order #1c-13. The CA's consideration of the entire command roster, and his clearly stated understanding of the qualification criteria, "irrespective of rank, group or class,"[7] removed any contamination remaining from the earlier process. As a result, convening order #1c-13 did not represent an improper exclusion of members based on rank.

Moreover, even if the appellant did establish an improper exclusion, the Government has demonstrated the error did not materially prejudice a substantial right of the accused.

To determine prejudice from a systematic exclusion of members by rank in cases in which the appellant elects trial by military judge alone, we must first determine whether his election was predicated on the improperly selected panel. *See United States v. Greene,* 43 C.M.R. 72, 79 (C.M.A. 1970) (stating that, for constitutional violations of Article 25, "th[e] accused's conviction cannot stand if he abandoned his right (and was tried by military judge alone) to avoid trial before an improperly selected panel . . .") (citation and internal

---

[7] AE XXXVI at 3.

quotation marks omitted); *United States v. Hilow*, 32 M.J. 439, 444 (C.M.A. 1991) (Cox, J., dissenting in part, "I would carefully examine the record to determine why the accused forewent his right to a trial by members").

If the Government demonstrates that the appellant's decision to elect trial by military judge alone was not tainted, then the systematic exclusion was harmless and did not materially prejudice a substantial right of the appellant. However, if the appellant's decision was predicated by the exclusion, then the Government must demonstrate that the appellant was provided both a fair panel and the appearance of a fair panel. *United States v. Ward*, 74 M.J. 225, 228 (C.A.A.F. 2015) (applying *United States v. Bartlett*, 66 M.J. 426 (C.A.A.F. 2008) and *Kirkland*, *supra*, in conjunction, to analyze prejudice).

In this case, the appellant elected trial by military judge alone, in part, because he believed the panel was defective. As a result, the appellant's decision was predicated on the panel issue, and we must analyze whether the appellant was provided both a fair panel and the appearance of a fair panel.

*Provided a Fair Panel*

To determine whether the appellant was provided the benefit of a fair panel in a case tried by military judge alone, we consider several factors relevant to the factual circumstances presented in this case, including whether: the convening authority's motivation in detailing the members was benign; the convening authority was authorized to convene the court-martial; and the court members met the criteria in Article 25, UCMJ. *Ward*, 74 M.J. at 228. Likewise, we consider whether, "taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt by the military judge's actions." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (citation and internal quotation marks omitted).

We do not find any cause to question the fairness of the panel based on the processes used by the CA to generate convening order #1c-13. This is particularly so given that neither the CA nor the SJA had an improper motive to "stack" the member pool and the CA clearly identified members he personally knew and believed were best qualified from among all members of his command using the Article 25 criteria. Also, we find no evidence that the court-martial's legality, fairness, or

8

impartiality were put into doubt by any action of the military judge.  By every objective measure, the appellant received a fair trial from this military judge.

*Appearance of a Fair Panel*

To determine whether the appellant was provided the appearance of a fair panel, we ask whether "the essential fairness and integrity of the military justice system" requires reversal.  *Kirkland* 53 M.J. at 25 (citation and internal quotation marks omitted).  In this case, the CA's subsequent actions——choosing members that he personally knew met the Article 25 criteria after he consulted the entire command roster——resolved any remaining appearance of improper exclusion.  For these reasons, we do not find any cause to question the essential fairness and integrity of the court-martial.  From an appearance perspective, the integrity of the system has not been damaged by this case's overwrought member selection process.

For these reasons, the Government has successfully shouldered its burden of demonstrating a lack of material prejudice to a substantial right of the appellant.

## Conclusion

After careful consideration, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.  The findings and the sentence are therefore affirmed.

For the Court



R.H. TROIDL
Clerk of Court

9