UNITED STATES, Appellee,

v.

Jesse L. KIRKLAND, Airman First Class, U.S. Air Force, Appellant.

No. 99–0651.
Crim.App. No. 33064.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 2, 2000.

Decided May 1, 2000.

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE and EF-FRON, JJ., and COX, S.J., joined. SULLI-VAN, J., filed a dissenting opinion.

For Appellant: *Major Thomas R. Uiselt* (argued); *Colonel Jeanne M. Rueth* (on brief).

For Appellee: *Captain Christa S. Cothrel* (argued); *Colonel Anthony P. Dattilo* and *Lieutenant Colonel Ronald A. Rodgers* (on brief).

Chief Judge CRAWFORD delivered the opinion of the Court.

Pursuant to his pleas, appellant was convicted of wrongful possession, use, and distribution of LSD and marihuana over a 4–month period of time, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. A panel of officer and enlisted members sentenced him to a bad-conduct discharge, confinement for 1 year, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Criminal Appeals affirmed. We granted the assigned issue as follows:

WHETHER THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION FOR A NEW COURT–MARTIAL PANEL.

For the reasons set forth below, we reverse the Court of Criminal Appeals.

FACTS

Prior to his court-martial, appellant submitted a request for the appointment of enlisted members. In response to that request, the General Court–Martial Convening Authority (GCMCA) selected senior enlisted servicemembers as members of appellant's court-martial panel. These enlisted members were selected from a nomination list of nine noncommissioned officers provided to the GCMCA by the Special Court–Martial Convening Authority (SPCMCA) and his servicing Staff Judge Advocate (SJA). At trial, appellant's defense counsel brought a motion to dismiss for lack of jurisdiction based on improper jury selection.

Two paralegal noncommissioned officers from the Base Legal Office testified at trial as to the process for nominating and recommending prospective enlisted court members for appellant's court-martial. Senior Airmen G testified that the Legal Office sent out a quarterly letter to the group commanders, signed by the Base Commander, the SPCMCA, asking for nominees for a court member selection pool. The letter requested each commander nominate a specific number of qualified personnel from a variety of ranks. Each nominee was required to submit an updated court member data sheet to the Legal Office. Attached to the letter was a chart evidencing the specific number of personnel of each military rank a particular commander was asked to nominate. This chart was based on a "unit management document" utilized by the Base Legal Office military justice section. The number and rank of the personnel that each commander was asked to nominate for court member selection was derived from the unit management document in order to avoid overtasking the individual units. The chart had a column for E–7, E–8, and E–9, but no place to list a nominee in a lower grade. To nominate an E–6 or below, the nominating official would have to modify the form.

Staff Sergeant F, the other paralegal noncommissioned officer, stated that she supplied the names of enlisted personnel for court-martial duty by looking through a Legal Office notebook filled with the data sheets of the enlisted personnel nominated by their units as potential court-martial panel members. She then called the units to determine each potential member's availability, and compiled a list of the available members, which was provided to the SPCMCA with the court member data sheets.

Colonel C, the SPCMCA, testified he nominated prospective court members from the list provided by the Legal Office and then transmitted the list to the GCMCA, Major General H, who made the final selections. He also testified that he understood that he could recommend whomever he wanted for the court-martial, provided they met the requirements of Article 25, UCMJ, 10 USC § 825.

Lieutenant Colonel W, the acting SJA, testified that the Legal Office transmitted the list to the GCMCA. He also testified that he briefed Major General H on his duties and his ability to select other military members, assuming they met Article 25 criteria.

In finding a lack of intent by the convening authority to systematically exclude enlisted members below the grade of E–7, the military judge made the following pertinent findings of fact and conclusions of law:

Over the last three months, three enlisted members had requested enlisted members on their court. These requests required them to duplicate this process for enlisted members, and in order to save time, the military justice section NCOs requested the squadrons and groups to also nominate NCOs. The worksheet only had room for E–9s, E–8s, and E–7s. When the accused in this case requested enlisted members, the NCOs only contacted enlisted members for whom they had data sheets, specifically E–7s, E–8s and E–9s.

The legal office then submitted Appellate Exhibit IV to the special court-martial convening authority to use to recommend names of enlisted members who were available for court duty. The special court-martial convening authority testified he knows he can pick anyone under his command as a court member. He has filled in names of persons not in the suggested list before, but chose not to do so in this case.

\* \* \*

In this case, the original court panel contained a broad spectrum of ranks. The special court-martial convening authority has no recollection as to why he chose to delete the junior officer members from this court when the accused requested enlisted members, other than he had appointed a lieutenant colonel to be an investigating officer and needed to excuse him.

\* \* \*

In this case, the testimony of the special court-martial convening authority and the general court-martial convening authority['s] legal advisor is that rank was not a criterion for member selection, and both convening authorities know about their authority to appoint any member of their command as a court member.

The likelihood is that subconsciously enlisted members below E–7 were not selected because they did not appear on the list which is Appellate Exhibit IV. The likelihood that someone not on the list will be selected is less than the likelihood someone on the list will be selected. However, does this equate to a violation of Article 25? In light of the explicit testimony, the answer is no.

## DISCUSSION

■ Whether a court-martial panel was selected free from systematic exclusion is a question of law which we review *de novo*. *United States v. McClain*, 22 MJ 124 (CMA 1986). The defense shoulders the burden of establishing the improper exclusion of qualified personnel from the selection process. *United States v. Roland*, 50 MJ 66, 69 (1999). Once the defense establishes such exclusion, the Government must show by competent evidence that no impropriety occurred when selecting appellant's court-martial members. *Cf. Castaneda v. Partida*, 430 U.S. 482, 501, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977)(state failed to rebut the presumption of purposeful discrimination by competent testimony).

■ While the military defendant does not enjoy a Sixth Amendment right to a trial by "impartial jury," he or she does have a right to "members who are fair and impartial." *Roland*, 50 MJ at 68. In *Roland*, we stated that "members may not be selected solely on the basis of their rank." We also said:

> Presenting nominations to a convening authority is a reasonable means of assisting the convening authority, provided it does not improperly exclude eligible servicemembers.... This nomination process may not systematically exclude or include a certain category of servicemembers. When the request for nominations does improperly include or exclude certain members, this court will ensure that those actions do not taint the selection by the convening authority.

*Id.* at 68–69 (citation omitted).

Here, the Legal Office sent out a quarterly letter with an attached chart to the group commanders, signed by the Base Commander, asking for nominees for a court member selection pool. The letter from the SJA told the group commanders to nominate officers and senior enlisted persons using the at-

tached chart. The chart did not provide any place to nominate court members below the grade of E–7.

Additionally, when suggested nominations were forwarded, there were no enlisted nominees below the grade of E–7. Finally, the GCMCA did not appoint any enlisted member not on the list.

■ Although this case does not involve the clear institutional bias found in *McClain,* the exclusion of potentially qualified members below the grade of E–7 in this case was improper. *See generally United States v. Daigle,* 1 MJ 139 (CMA 1975). Under these facts, we hold that the military judge erred in denying the defense request for a new court-martial panel.

Even though the military judge found that neither the SPCMCA nor the GCMCA used rank as a criterion in the selection process, where an unresolved appearance that potentially qualified court members below the grade of E–7 were excluded, "reversal of the sentence is appropriate to uphold the essential fairness and integrity of the military justice system." *McClain,* 22 MJ at 133 (Cox, J., concurring in the result).

No more than that is needed, however, because there is no indication that the exclusion of enlisted members below the grade of E–7 induced appellant's guilty plea, nor does he attack its voluntariness.

The decision of the United States Air Force Court of Criminal Appeals is affirmed as to findings but reversed as to sentence. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court. A rehearing on sentence is authorized.

SULLIVAN, Judge (dissenting):

I fail to understand why the majority is departing from *United States v. Roland,* 50 MJ 66 (1999), which was decided only a year ago. I concurred in the result of that case

which affirmed the decision of the court below that the military judge did not err in failing to find that the jury had been improperly selected. I stated:

The staff judge advocate (SJA)'s letter sought court nominations from every grade from E–5 to O–6 to be included in the recommended jury pool. The implicit exclusion of certain ranks (E–4 and below) in appellant's case troubles me. However, the SJA's letter, on its face, was designated as mere guidance, and the convening authority was informed of his opportunity to select anyone from his command. Moreover, the military judge found that no bad intent to influence the court-martial and no deliberate stacking of the pool existed, as in *United States v. Hilow,* 32 MJ 439 (CMA 1991). I would hold there was no violation of Articles 25 and 37, Uniform Code of Military Justice, 10 USC §§ 825 and 837, in these circumstances. Perhaps, if a random jury selection system now being studied by the Department of Defense is adopted, challenges like the one in this case will occur less. *See United States v. Upshaw,* 49 MJ 111, 114 (1998)(Sullivan, J., concurring).

50 MJ at 70.

I am troubled by the implicit exclusion of certain ranks in appellant's case as well, but I reach the same conclusion here as I did in my separate opinion in *Roland.* The majority places too much emphasis on the "form" of the chart attached to the letter asking for court-martial member nominees in the instant case. As in *Roland,* the instant record shows no policy to exclude portions of the enlisted ranks. Specifically, the form of the chart demonstrates nothing but a mistake of the legal office and the command in putting together the composition of this court-martial. The majority truly elevates "form" over substance to reverse a case without adequate legal reason. I would affirm this felony drug conviction and the approved sentence.