UNITED STATES, Appellee

v.

Darron D. WARD, Jr., Culinary Specialist Seaman Apprentice
U.S. Navy, Appellant

No. 15-0059

Crim. App. No. 201400021

United States Court of Appeals for the Armed Forces

Argued March 17, 2015

Decided June 11, 2015

ERDMANN, J., delivered the opinion of the court, in which BAKER, C.J., and STUCKY, RYAN, and OHLSON, JJ., joined.

<u>Counsel</u>

For Appellant:  Lieutenant Jessica L. Ford, JAGC, USN (argued).

For Appellee:  Major Suzanne M. Dempsey, USMC (argued); Colonel Mark K. Jamison, USMC, Captain Matthew M. Harris, USMC, and Brian K. Keller, Esq. (on brief); Lieutenant Commander Keith Lofland, JAGC, USN.

Military Judge:  Michael J. Luken

**This opinion is subject to revision before final publication.**

Judge ERDMANN delivered the opinion of the court.

Contrary to his pleas, Culinary Specialist Seaman Apprentice (E-2) Darron D. Ward, Jr., was convicted by a panel of officer and enlisted members sitting as a general court-martial of fleeing apprehension, rape, and communicating a threat, in violation of Articles 95, 120, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 895, 920, 934 (2012). Ward was sentenced to 933 days of confinement and a dishonorable discharge. The convening authority approved the sentence as adjudged. The United States Navy-Marine Corps Court of Criminal Appeals (CCA) affirmed the findings and sentence, holding that while "servicemembers were impermissibly excluded from the member selection process by virtue of their rank," the error was harmless. United States v. Ward, No. NMCCA 201400021, 2014 CCA LEXIS 535, at *6-*7, 2014 WL 3797429, at *2 (N-M. Ct. Crim. App. July 31, 2014). We granted review to determine whether Ward was prejudiced by the selection process error.[1] Finding no prejudice, we affirm.

---

[1] We granted review of the following issue:

> The convening authority issued an instruction that limited court-martial member nominations to personnel only in the pay-grades between E-7 and O-5. The lower court found this systematic exclusion of personnel to be error, but harmless. Should this court set aside Appellant's convictions based on the rationale of United States v. Kirkland due to the unresolved appearance of unfairness?

### Background

On July 29, 2008, the Commander of Naval Air Force Atlantic (COMNAVAIRLANT), a general court-martial convening authority, issued an instruction entitled NOMINATION FOR MEMBERSHIP ON COURTS-MARTIAL CONVENED BY COMNAVAIRLANT, the purpose of which was "[t]o publish procedures for submission of nominations for prospective court[s]-martial members to [the convening authority]." Dep't of the Navy, Commander Naval Air Force Atlantic Instr. 5813.1H, Nomination for Membership on Courts-Martial Convened by COMNAVAIRLANT, para. 1 (July, 29, 2008) [hereinafter COMNAVAIRLANTINST 5813.1H]. The Instruction recognized that all of the convening authority's staff was subject to nomination as potential court-martial members, and in fact, each member of the staff, regardless of rank, was required to complete a court-martial questionnaire upon arrival at station. Id. at para. 5. COMNAVAIRLANTINST 5813.1H, para. 5, provides:

> 5. Action. In addition to COMNAVAIRLANT [s]taff members who regularly sit on courts-martial, the commands listed below are required to submit quarterly nominations for prospective members in the number and grade indicated, to serve as court-martial members for a period of three months.

COMNAVAIRLANTINST 5813.1H went on to restrict the personnel that could be nominated by the subordinate commands to officers in

---

United States v. Ward, ___ M.J. ___ (C.A.A.F. 2014) (order granting review).

the grades of O-5 and below and to enlisted members in the grades of E-7, E-8, and E-9. Id. Therefore, under COMNAVAIRLANTINST 5813.1H, the subordinate commands could not nominate personnel who were O-6 and above or E-6 and below.

Prior to the convening authority's selection of panel members in the present case, the Force Judge Advocate (FJA) to the Commander, Naval Air Force Atlantic, provided the convening authority with a draft convening order that detailed potential members to serve on the panel, along with the members' questionnaires. The FJA advised the convening authority that the proposed members were "best qualified" by reason of age, education, training, experience, length of service, and judicial temperament. The FJA also advised the convening authority that he could choose the panel members recommended or choose anyone else within his claimancy that he deemed best qualified.[2] The convening authority approved the convening order as drafted, which detailed two O-5s, three O-4s, one E-8, and six E-7s to the court-martial.

Four months prior to trial, the defense had served the government with a discovery request, which included, in part, a request for: "[c]opies of all information . . . used by the

---

[2] The CCA granted a government consent motion to attach affidavits from the two FJAs and the COMNAVAIRLANT who served during the relevant time periods. These affidavits generally describe the manner in which members were nominated, screened and detailed to courts-martial by this convening authority.

convening authority . . . in nominating prospective, and in selecting final court members for all court-martial orders in this case." In its response to the defense request, the government did not provide or reference COMNAVAIRLANTINST 5813.1H.

During trial, the panel members detailed by the convening authority were extensively voir dired. The defense made three challenges for cause, two of which were granted. The defense chose not to use its peremptory challenge on the member whose challenge was denied. The panel that was ultimately assembled was comprised of one 0-4, one E-8, and 6 E-7s.

Approximately four months after Ward was convicted, the defense became aware of COMNAVAIRLANTINST 5813.1H. The defense submitted a supplemental clemency request to the convening authority, arguing that the Instruction's limiting of potential court-martial members by rank was a violation of Article 25, UCMJ. The FJA recommended that the convening authority provide no relief to Ward as he believed the issue had been waived. Following the FJA's advice, the convening authority denied the requested relief.

On appeal to the CCA, Ward again challenged the convening authority's court-martial member selection process under COMNAVAIRLANTINST 5813.1H. Ward also asserted a discovery violation for the government's failure to provide the

United States v. Ward, Jr., No. 15-0059/NA

Instruction to the defense.  Ward, 2014 WL 3797429, at 2014 *1, 2014 CCA LEXIS 535, at *1-*2.  The CCA agreed with Ward on both issues, ruling that the government's failure to produce the Instruction was a discovery violation and that Article 25, UCMJ, had been violated when "service members were impermissibly excluded from the member selection process by virtue of their rank."  Id. at *6-*7, 2014 WL 3797429, at *2.  However, the CCA found both errors to be harmless.  Id. at *6-*7, *9, 2014 WL 3797429, at *2-*3.  Before this Court, Ward argues that the CCA erred when it determined he was not prejudiced by the convening authority's violation of Article 25.

## Discussion

The sole issue before this court is whether the violation of Article 25, UCMJ, as held by the CCA, prejudiced Ward.[3]  Where there is a "nonconstitutional error in the application of Article 25, UCMJ, we must determine if the error 'materially

---

[3] The government did not certify the CCA's findings of error and has not argued that the "law of the case" doctrine is inapplicable in this case.  See United States v. Lewis, 63 M.J. 405, 412-13 (C.A.A.F. 2006) ("Where neither party appeals a ruling of the court below, that ruling will normally be regarded as law of the case and binding upon the parties.  The law of the case doctrine is a matter of discretionary appellate policy and does not prohibit this court from reviewing the ruling below. However, under the law of the case doctrine this court will not review the lower court's ruling unless the lower court's decision is clearly erroneous and would work a manifest injustice if the parties were bound by it.  That standard is difficult to achieve: a finding of manifest injustice requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong.") (internal quotation marks and citations omitted); see also C.A.A.F. R. 19(b)(3).

prejudiced the substantial rights of the accused'" under Article 59(a), UCMJ.  United States v. Gooch, 69 M.J. 353, 360 (C.A.A.F. 2011) (citation omitted).  We review prejudice determinations under a de novo standard of review.  United States v. Diaz, 45 M.J. 494, 496 (C.A.A.F. 1997).

Ward contends that while the CCA correctly decided there was a systematic exclusion of court-martial members based on rank in this case, it erred when it looked to the factors considered by the court in United States v. Bartlett, 66 M.J. 426, 431 (C.A.A.F. 2008), to determine prejudice.  Ward argues that, instead, the CCA should have utilized the standard set forth in United States v. Kirkland, 53 M.J. 22, 25 (C.A.A.F. 2000), which held that a conviction is reversed for violations of Article 25, UCMJ, when there exists an unresolved appearance of unfairness in the court-martial member selection process.

The government counters that the CCA correctly used the Bartlett standard, which reviewed prejudice in accordance with Article 59(a), UCMJ.  Bartlett, 66 M.J. at 429-30.  The government also argues Kirkland is inapplicable because in that case the prospective pool of members was limited, while here the convening authority included members of his staff in the pool without any restrictions on rank.

In Kirkland, the convening authority requested subordinate commanders to nominate a specific number of qualified personnel

to be potential panel members.  53 M.J. at 24.  The request

included a chart which listed the number of nominees to be

submitted from each rank.  Id. at 24-25.  However, the chart did

not list any enlisted grades below the rank of E-7.  Id. at 25.

In that case, we found a violation of Article 25, UCMJ, and held

that "where an unresolved appearance that potentially qualified

court members . . . were excluded, reversal of the sentence is

appropriate to uphold the essential fairness and integrity of

the military justice system."  Id. (internal quotation marks and

citation omitted).

In Bartlett, we again considered an alleged Article 25,

UCMJ, violation, this time involving an instruction that

excluded doctors, dentists, nurses, veterinarians, and chaplains

from the nomination process and which "directly conflict[ed]

with the provisions of Article 25, UCMJ, on the same subject."

66 M.J. at 427, 429.  In determining prejudice, we rejected the

defense's argument of structural error and held that under

Article 59(a), UCMJ, the court could not find harm "'unless the

error materially prejudice[d] the substantial rights [of] the

accused.'"  Id. at 429-30 (first alteration in original)

(citation omitted).  We further held that "[t]he burden of

demonstrating prejudice, or the lack thereof, from

nonconstitutional error in the detailing of court members

depends on the manner in which the error occurred."  Id. at 430.

United States v. Ward, Jr., No. 15-0059/NA

In cases where "a convening authority has intentionally included or excluded certain classes of individuals from membership, in an attempt to comply with the requirements of Article 25, UCMJ . . . we have placed the burden on the government to demonstrate lack of harm." Id.; see also Gooch, 69 M.J. at 361 (holding the burden was on the government to show a lack of harm when a selection error was "more than a ministerial mistake").

In Bartlett, we considered six factors relevant to the factual circumstances presented in that case, to determine whether the government had met its burden of demonstrating that the error was harmless. 66 M.J. at 431. Those factors asked whether: (1) the convening authority enacted or used the instruction with a proper motive; (2) the convening authority's motivation in detailing the members he assigned to the court-martial panel was benign; (3) the convening authority who referred the "case to trial was a person authorized to convene" the court-martial; (4) the appellant "was sentenced by court members personally chosen by the convening authority from a pool of eligible" members; (5) the court members "all met the criteria in Article 25, UCMJ;" and (6) "the panel was well-balanced across gender, racial, staff, command, and branch lines." Bartlett, 66 M.J. at 431 (internal quotation marks omitted). Evaluating those criteria, we held that the

government had met its burden of demonstrating that the error was harmless.  Id.

Unsurprisingly, Ward argues that we should apply the Kirkland "essential fairness and integrity" appearance standard, while the government argues that the Bartlett Article 59(a), UCMJ, criteria should control our prejudice analysis.  In our view, the two cases can be read in conjunction with one another, giving effect to both.  Simply put, an accused must be provided both a fair panel (Bartlett) and the appearance of a fair panel (Kirkland).[4]  This construction is in accord with our precedent. See United States v. McClain, 22 M.J. 124, 132 (C.M.A. 1986) ("[W]e note that -- because [d]iscrimination in the selection of court members on the basis of improper criteria threatens the integrity of the military justice system and violates the Uniform Code, . . . this Court is especially concerned to avoid either the appearance or reality of improper selection.") (alteration in original) (internal quotation marks and citation omitted); United States v. Clay, 64 M.J. 274, 276-77 n.1 (C.A.A.F. 2007) ("The criteria for member selection specified by Article 25, and challenges for cause based on R.C.M. 912(f) are additional safeguards against both the reality and perception of

---

[4] We further note that while Kirkland did not expressly reject the application of the structural error rule to violations of Article 25, as we did in Bartlett, it did so impliedly by articulating a type of prejudice which would warrant reversal (the unresolved appearance of unfairness).

unfairness." (citations omitted)).  Accordingly, <u>Bartlett</u> and

<u>Kirkland</u> are not mutually exclusive and can be construed in

harmony with one another.

We commence our analysis by noting that there has been no

allegation in this case that that the panel members ultimately

selected did not qualify under Article 25, UCMJ, on the basis of

age, education, training, experience, length of service, and

judicial temperament.  It is rather the process utilized by the

convening authority which either did, or did not, prejudice

Ward.  Based on our review of the convening authority's actions

in this case, we believe that the government has met the

standards under both <u>Bartlett</u> and <u>Kirkland</u>.[5]

Under <u>Bartlett</u>, the government has shown that the convening

authority used the instruction without an improper motive.

<u>Bartlett</u>, 66 M.J. at 431.  In his post-trial affidavit, the

convening authority stated that in selecting members for courts-

martial, it was not his intent to "systematically exclude anyone

on the basis of rank alone."  The record supports that

assertion.  Both the FJA and the convening authority

acknowledged the convening authority was aware he could select

---

[5] This court recognizes that, under the current state of the law,
even if an appellant establishes a violation of Article 25,
UCMJ, there exists no remedy for that violation if the
government shows it was harmless.  We note this situation to
alert the Joint Service Committee on Military Justice, in the
event it may wish to consider a recommendation to the President
a procedure by which the requirements of Article 25, UCMJ, may
be enforced in the absence of prejudice.

anyone he chose from within his command, including members of his staff, as long as they met the Article 25, UCMJ, criteria. Importantly, the convening authority had each member of his staff, regardless of rank, fill out a court-martial member questionnaire upon arriving on station. Because a stated purpose of COMNAVAIRLANTINST 5813.1H was to supplement the pool of potential panel members from the convening authority's staff, and because the convening authority did not utilize COMNAVAIRLANTINST 5813.1H to systematically exclude specific ranks from his consideration, the instruction was not used with an improper motive. The government has also shown that the convening authority's motivation in detailing the members was benign. Bartlett, 66 M.J. at 431. Indeed, a review of the post-trial affidavits shows an honest, though erroneous, attempt to meet the requirements of both Article 25, UCMJ, and the command's mission.[6] Thus, this is not a scenario where applicable instructions systematically excluded members of a certain grade. Nor was that the convening authority's intent.

As we have noted, the holding in Kirkland focused on the "unresolved appearance that potentially qualified court members . . . were excluded, [and therefore] reversal . . . is

---

[6] The government has also established that the convening authority was a person authorized to convene the court-martial, that Ward was sentenced by court members personally chosen by the convening authority from a pool of eligible members, that the court members all met the criteria in Article 25, UCMJ, and that the panel was balanced. Bartlett, 66 M.J. at 431

United States v. Ward, Jr., No. 15-0059/NA

appropriate to uphold the essential fairness and integrity of the military justice system." 53 M.J. at 25 (internal quotation marks and citation omitted). In this case, however, due to the record developed at the court-martial and the CCA, there is no "unresolved appearance that potentially qualified court members were excluded." Id. Although COMNAVAIRLANTINST 5813.1H by its own terms excluded certain categories of eligible court members, that exclusion only applied to potential members from the subordinate commands, not to potential members from the convening authority's staff. Therefore, the member selection process utilized by the convening authority met the Bartlett criteria and did not leave an "unresolved appearance that potentially qualified court members . . . were excluded" from consideration. Kirkland, 53 M.J. at 25.

Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.