*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Emmanuel Q. BARTEE, Lance Corporal**
United States Marine Corps, Appellant

**No. 16-0391**
Crim. App. No. 201500037

Argued November 15, 2016 —Decided March 15, 2017

Military Judge: M. D. Zimmerman

For Appellant: *Major Benjamin A. Robles*, USMC (argued).

For Appellee: *Major Cory A. Carver*, USMC (argued); *Major Suzanne M. Dempsey*, USMC, *Captain Matthew Harris*, USMC, and *Brian K. Keller*, Esq. (on brief); *Colonel Mark K. Jamison*, USMC.

Judge SPARKS delivered the opinion of the Court, in which Judges STUCKY and OHLSON joined. Judge RYAN filed a separate opinion concurring in the result. Chief Judge ERDMANN filed a separate dissenting opinion.

———————

Judge SPARKS delivered the opinion of the Court.

Contrary to his pleas, Appellant was convicted by military judge alone of one specification of conspiracy to commit larceny, one specification of making a false official statement, and six specifications of larceny in violation of Articles 81, 107, and 121, Uniform Code of Military Justice, (UCMJ), 10 U.S.C. § 881, 907, 921 (2012). The adjudged and approved sentence included twenty months of confinement and a dishonorable discharge. Appellant appealed to the United States Navy-Marine Corps Court of Criminal Appeals and the lower court affirmed the findings and sentence. Appellant petitioned this Court for review on the following assigned issue:

> The systematic exclusion of individuals by rank from the member-selection process is prohibited. Here, the military judge dismissed the panel for violating Article 25, UCMJ, but the convening authority reconvened the exact same panel the same

day. Is this systemic exclusion based on rank re-
versible error?

We conclude that there was no systemic exclusion of mem-
bers based on rank and that the convening authority did not
violate Article 25, UCMJ, 10 U.S.C. § 824 (2012). According-
ly, we affirm the decisions of the United States Navy-Marine
Corps Court of Criminal Appeals and the military judge.

**Background**

The underlying facts related to the charges in this case
are not relevant to the issue before the Court. Instead we
focus on events surrounding the selection of the panel of
members. Prior to trial, Appellant objected to the lack of jun-
ior members on the convening order (1b-13), which appoint-
ed a panel comprised of officers at paygrade 0-4 and above,
enlisted members at paygrade E-8 and above, and no war-
rant officers. After having sent out a communication solicit-
ing updated member questionnaires only for officers at
paygrade 0-4 and above and enlisted personnel at paygrade
E-8 and above, the staff judge advocate assembled a draft
convening order. The staff judge advocate then forwarded
the draft list of sixteen potential members to the convening
authority (Colonel Schultz[1]) along with the potential mem-
bers' completed questionnaires. The convening authority se-
lected the panel from that list of sixteen.[2]

On September 29th, 2014, the military judge sustained
Appellant's objection to the panel and found that the selec-
tion process had excluded potential members based on rank.
The staff judge advocate then provided the convening au-
thority (now General Coglianese) with an amended conven-
ing order (1c-13) consisting of the same list of names. The
convening authority also received the full roster of over
8,000 potential members and was informed he could substi-
tute any of those names who fit the Article 25, UCMJ, crite-

---

[1]By order of General Coglianese, Colonel Schultz had been ap-
pointed acting commander for the period from September 4, 2014,
to September 26, 2014.

[2] The original convening order was 1a-13. However, due to a
delay in the proceedings, the convening authority (now General
Coglianese) did make two substitutions for members who were not
available to sit on the panel, neither of whom was from the staff
judge advocate's original list of sixteen. This resulted in convening
order 1b-13.

ria if he so desired. The following day (September 30th, 2014), the convening authority appointed the exact same panel. In a letter addressed to the military judge he stated that, "I know these individuals personally and selected them specifically because I am convinced they meet the qualifications for membership." He also confirmed that he recognized he could have chosen from among the full roster of "roughly 8,000 Marines and sailors" and that he personally selected this panel based on Article 25, UCMJ, criteria.

Defense counsel objected to the new order, claiming that the defect in the previous order had not been cured. The military judge overruled the objection, finding that any appearance that the members had been excluded according to rank was resolved by creation of the second order in compliance with Article 25, UCMJ.

Following the military judge's ruling, defense counsel stated that based on the military judge's ruling, it was their position that, "[W]e are forced to abandon our request for trial by members . . . and Lance Corporal Bartee is requesting trial by military judge alone." Given counsel's statement, the military judge informed the parties that it would be necessary to query Appellant to determine whether his request to waive his right to trial by members was knowing, intelligent, and voluntary. Twice during this colloquy with counsel, the military judge stated that his ruling on the Article 25, UCMJ, issue was preserved for appeal. During this discussion, defense counsel stated that the military judge's ruling on the panel was one but not the only factor in the decision to forgo trial by members and declined to specify the other reasons, citing attorney-client privilege. Following the colloquy, the military judge approved Appellant's request and the military judge alone trial moved forward.

## Discussion

Appellant asks this Court to determine if a systematic exclusion of individuals by rank from the member selection process led to an improperly selected panel. Whether a court-martial panel was selected free from systematic exclusion is a question of law reviewed de novo. *United States v. Kirkland*, 53 M.J. 22, 24 (C.A.A.F. 2000). The burden is on the defense to establish the improper exclusion of qualified personnel from the selection process. *Id.* Once the defense establishes such exclusion, the government must show by competent evidence that the member selection process was free from impropriety. *Id.*

Article 25, UCMJ, details who may serve on a court-martial. The list includes commissioned officers, warrant officers, and–when specifically requested by the defendant–enlisted members may serve on a court-martial of another enlisted member. If it can be avoided, members should not be junior in rank to the defendant. In addition, "[w]hen convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Article 25(d)(2), UCMJ.

In *United States v. Ward*, 74 M.J. 225 (C.A.A.F. 2015), this Court married two threads of analysis provided by earlier case law, *United States v. Bartlett,* 66 M.J. 426 (C.A.A.F. 2008), and *Kirkland,* 53 M.J. 22, and stated that an accused must be provided "both a fair panel . . . and the appearance of a fair panel." *Ward,* 74 M.J. at 228. Here, as in *Ward*, there were no allegations that that the panel members selected did not qualify on the basis of age, education, training, experience, length of service, and judicial temperament. *Id.* at 229. Instead, Appellant posits that it was the process utilized by the convening authority which was improper.

"Congress and the President crafted few prohibitions on court-martial service to ensure maximum discretion to the convening authority in the selection process, while maintaining the basic fairness of the military justice system." *Bartlett*, 66 M.J. at 429. However, systemic exclusion of otherwise qualified potential members based on an impermissible variable such as rank is improper. *United States v. Dowty*, 60 M.J. 163, 171 (C.A.A.F. 2004). A staff judge advocate can assist the convening authority as long as this help does not improperly exclude any potential members. *United States v. Roland*, 50 M.J. 66, 69 (C.A.A.F. 1999).

In *Dowty*, this Court identified three factors that are most helpful in evaluating any process for screening potential members. These include looking for:

(1) Improper motive to "pack" the member pool;

(2) Systemic exclusion of otherwise qualified members based on an impermissible variable like rank; and

(3) Good faith efforts to be inclusive so courts-martial are open to all segments of the military community.

60 M.J. at 171.

4

With respect to factors one and three, there is no credible evidence indicating bad faith or improper motive on the part of the staff judge advocate or convening authority in redrawing the second panel, despite the fact that it was comprised of the same members.[3] However, lack of bad faith or improper motive is not dispositive in and of itself. We now focus on factor two and whether the redrawn panel 1c-13 was tainted by an impermissible exclusion of qualified members on the basis of rank.

The present case can be distinguished from the two cases central to Appellant's argument. In *Kirkland*, 53 M.J. 22, the convening authority gathered members by sending out a communication requesting nominees and an accompanying chart that had columns for enlisted members only at ranks E-7 and above. *Id.* at 23. The appellant brought a motion to dismiss the panel. *Id.* This Court found the exclusion of the lower ranks improper and the sentence was reversed (the appellant pled guilty and never went to trial). *Id.* at 25. The exclusion of members below a certain rank occurred in a similar manner as in the present case, with nominees recruited through a communication that only requested members above a certain rank. However, unlike in this case, the military judge never determined that first panel was improper so the government did not have an opportunity to go back and allow the convening authority to reconsider its composition.

In *United States v. Greene*, selection of members was restricted in accordance with a memo from the staff judge advocate recommending use of only those of a certain rank (lieutenant colonels and colonels) as members. 20 C.M.A. 232, 233, 43 C.M.R. 72, 73 (1970*).* In light of this memo, the original panel, selected by the special court-martial authority and consisting of a range of officers, was rejected by the chief of military justice in favor of a limited panel. *Id.* at 235, 43 C.M.R. at 75. The military judge requested that the con-

---

[3] Appellant introduces an e-mail that allegedly circulated regarding a higher level decision to pack panels with senior members because sentences had been too light and there had been too many not guilty findings. Though this would clearly entail interference with the ban on systemic exclusion according to rank, Appellant provides no information linking the e-mail to any of the actors in the present case and the audience and reach of the e-mail seem to be unknown as well. Therefore, we find no reason to take this e-mail under consideration.

vening authority reconsider the panel and the appointment of officers of other grades, and the convening authority responded that he intended to keep the same panel, as he considered them the most qualified under Article 25, UCMJ. *Id.* at 235-36, 43 C.M.R. at 75-76. The *Greene* court found the panel had been improperly constituted and remanded the case. *Id.* at 238-39, 43 C.M.R. at 78-79. The most notable difference in *Greene* is that it lacked the step in which the convening authority stated directly to the court that he had reconsidered the panel with full awareness of the Article 25, UCMJ, factors and the full roster of Marines available as potential members.

The central question here is whether, given the circumstances surrounding the assembly of the second panel, the member selection process still maintained the appearance of fairness and integrity. We conclude that the additional steps taken by the convening authority were sufficient to cure any systemic exclusion of members by rank. In his letter to the trial court, the convening authority expressly stated that he considered the Article 25, UCMJ, criteria and personally selected the panel only on the basis of that criteria, and confirmed that he was cognizant of the roster of "roughly 8000 Marines and sailors" from which he could have drawn members. We are satisfied that–despite the composition of the second panel being identical to that of the first–any improprieties were cured in the steps taken by the convening authority the second time around. Panel 1c-13 was not tainted by systematic exclusion according to rank.

## Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

Judge RYAN, concurring in the result.

Because I would decide this case on a more narrow basis than either the majority or the dissent, I do not reach the question whether Appellant's second court-martial panel satisfied the dictates of Article 25, UCMJ, 10 U.S.C. § 825 (2012). It is axiomatic that "a valid waiver leaves no error for us to correct on appeal." *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009). Appellant voluntarily chose a military judge-alone trial, for undisclosed reasons, and thus waived his right to complain about the composition of a panel that was of no further relevance to his court-martial.

In *United States v. Greene*, we held that a defendant does not waive his right to appeal the composition of his court-martial panel if his decision to seek a trial by military judge alone is compelled by an unfair panel selection process. 20 C.M.A. 232, 239, 43 C.M.R. 72, 79 (1970). We also held in *United States v. Butler* that a military judge has broad discretion to deny a defendant's request to waive a trial by members. 14 M.J. 72, 73 (C.M.A. 1982); Rule for Courts-Martial (R.C.M.) 903(c)(2). In light of *Greene* and *Butler*, it should come as no surprise that the military judge in this case made clear that he would not accept Appellant's request to be tried by military judge alone if the panel selection process forced that decision.

Appellant's decision was not forced, and the military judge did not abuse his discretion by accepting Appellant's request for a military judge-alone trial. Appellant told the military judge, "I don't think [the panel selection process] forced me, sir." His counsel affirmed that he had other reasons than the panel selection process for waiving the panel. And before granting Appellant's request for a military judge-alone trial, the military judge asked Appellant multiple times whether his waiver of the right to a trial by a panel of members was knowing, intelligent, voluntary, and free of coercion. Appellant answered affirmatively each time. If we take Appellant and his counsel at their word (and there is no basis not to), Appellant's waiver was voluntary, based at least in part on factors other than the selection process. *Greene* is inapposite.

By knowingly and voluntarily waiving his right to a trial by members, Appellant waived the concomitant right to complain that the member selection process violated Article 25, UCMJ. If he had gone forward with a trial by members,

the issue of the flawed member selection process was preserved, as the military judge recognized.[1] And if the members had convicted him, he perhaps would have been able to articulate prejudice caused by the panel, as Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2012), requires. However, because he waived his right to trial by members for reasons unrelated to the member selection process, there is neither an "error for us to correct on appeal," *Campos*, 67 M.J. at 322, nor articulable prejudice to Appellant that can be traced to an error in the member selection process. I therefore respectfully concur in the result.

---

[1] It is not entirely unreasonable to conclude — as the majority does — that the military judge told Appellant that the panel composition issue was preserved whether or not Appellant waived his right to a panel. However, in my view, that is the least plausible reading of the record. In context, it appears certain (and also consistent with how the law actually works) that the military judge advised Appellant that the panel composition issue was preserved only if he proceeded to trial by the panel.

Chief Judge ERDMANN, dissenting.

"The right to trial by fair and impartial members or a professional military judge is the cornerstone of the military justice system." *United States v. Hilow*, 32 M.J. 439, 442 (C.M.A. 1991). "Discrimination in the selection of court members on the basis of improper criteria threatens the integrity of the military justice system and violates the Uniform Code." *United States v. Daigle*, 1 M.J. 139, 140 (C.M.A. 1975). Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2) (2012), does not set forth grade or rank as criteria for panel selection and "while it is permissible to appoint senior, qualified court members, the lower grades may not be systematically excluded." *United States v. Roland*, 50 M.J. 66, 68 (C.A.A.F. 1999) (citations omitted). "[S]ystemic exclusion of otherwise qualified potential members based on an impermissible variable such as rank is improper." *United States v. Dowty*, 60 M.J. 163, 171 (C.A.A.F. 2004). While a panel does not have to be composed of a cross section of the military community, "[b]lanket exclusion of qualified officers or enlisted members in the lower grades is at odds with congressional intent and cannot be sustained." *United States v. Nixon*, 33 M.J. 433, 434 (C.M.A. 1991).

As noted by the majority, this court has long recognized that in the member selection process, an accused must be provided "both a fair panel … and the appearance of a fair panel." *United States v. Ward*, 74 M.J. 225, 228 (C.A.A.F. 2015); *see also United States v. Bartlett*, 66 M.J. 426 (C.A.A.F. 2008); *United States v. Kirkland*, 53 M.J. 22 (C.A.A.F. 2000). Since this case reflects both the improper exclusion of potential members based on rank as well as the appearance of an improper selection process, I respectfully dissent from the majority's opinion.

<u>Background</u>

The First Selection Process:

As in all cases of alleged improper member selection, the process utilized in the selection of the members is of critical importance. Prior to trial, the staff judge advocate (SJA) of the 1st Marine Logistics Group sent an e-mail to subordinate commands soliciting member questionnaires from "officers in paygrade 0-4 and above and enlisted personnel in paygrade E-8 and above." After reviewing the questionnaires limited by rank, the SJA selected twelve members and four alternates and placed their names on a

member selection worksheet that he then provided to the convening authority. The convening authority signed the selection worksheet without alteration and, at the same time, signed the convening order that assigned the members from the selection worksheet to Bartee's panel.

During an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), session, trial defense counsel objected to the panel, arguing it was assembled in violation of Article 25. Specifically, defense counsel argued that the SJA had conceded that he had only solicited and included senior members when he created the selection worksheet. Trial counsel responded that the convening authority had been provided with the appropriate Article 25 advice and was aware that he could select anyone in the command. Trial counsel added:

> And we'll just note for whatever it's worth that in prior situations where this came up, we ended up with the same exact panel that was originally selected after going through the reconfirming. I—Yes, I understand I can pick whoever I want to, this is still the panel I want to go forward with.

Following further argument the military judge stated that the defense had raised evidence that there had been a systematic exclusion of certain ranks from the convening authority's consideration. The military judge speculated that the situation could be rectified by "perhaps providing [the convening authority] an entire alpha roster, telling him, hey, you pick." Ultimately the military judge recessed the hearing to allow the government time to determine its way ahead.

When the court reconvened, the government renewed its earlier arguments and also argued that there was no improper motive to stack the panel. The government provided the military judge with an affidavit from the SJA in which he explained the "top down" process he used to review the questionnaires he received from E-8s and above and O-4s and above:

> I start by looking members for [sic] possessing the requisite qualifications – this typically turns out to be more senior personnel. In the event I cannot find individuals within the senior ranks that do not meet the Article 25, UCMJ, criteria, I then begin to look towards the junior ranks.

The military judge ruled that the panel appeared to be improperly selected because the SJA's process of only soliciting enlisted members at paygrade E-8 and above and officer members at paygrade O-4 and above was an exclusion based on rank. The military judge struck the panel as improperly convened under Article 25 and directed the convening authority to convene a new panel.

The Second Selection Process:

When the court reconvened the next day, the government provided the military judge with a new list of panel members selected by a different convening authority.[1] As with the first list, the second list had been prepared and submitted to the convening authority by the SJA, but this time the SJA also submitted the 1st Marine Logistics Group's alpha roster. The second list deleted the members who had been on the original panel, but then reselected the same members, resulting in no change from the first panel that the military judge determined was improperly convened. The government also provided the court with an unsworn memorandum which, although signed by the convening authority, had been prepared for his signature by the SJA. The memorandum stated, in part:

> 3. I understand that, at any time during the process of selection of members for this court-martial, I could have selected any member of my command senior to the accused who I felt possessed the qualifications outlined by the reference irrespective of rank, group or class and did so in the previous panel in this case.[2]
>
> 4. I have roughly 8,000 Marines and sailors under my command at any moment in time. I could have selected

---

[1] The commanding general and convening authority of the 1st Marine Logistics Group was out of the area at the time of the initial convening order. The chief of staff, acting as the commander and convening authority, selected the initial list of panel members. However, prior to the submission of the second list of panel members, the commanding general had returned and reassumed his authority as the convening authority.

[2] Prior to submission of the second list, the second convening authority had replaced two members of the original panel due to their unavailability. However, while the second convening authority's memorandum refers to actions taken with respect to the initial panel, that convening authority did not convene the initial panel.

3

any of them that possess the qualifications in the reference, but I know these individuals personally and selected them specifically because I am convinced they meet the qualifications of the membership.

Following further arguments by the parties, the military judge ruled from the bench:

I think without some evidence that there was improper motive, [the convening authority] personally chose these candidates, he is qualified and authorized to convene a general court-martial, they all meet the Article 25 criteria, [and] there is no evidence of an improper purpose or improper motive in putting this panel together.

As for the SJA's top down approach in the initial solicitation of panel members, the military judge completely reversed his initial determination:

Based on the Article 25 criteria, I can't say that [the SJA], in using the top-down approach is somehow a wrong application of Article 25. I don't see how that is designed to systematically exclude anybody....

They are the same members as we had yesterday, but I think that easily could underscore the fact that these are the folks the General knew, the General was comfortable with, and the General correctly applied the Article 25 criteria. Even though the selection -- the nomination process may have had its flaws, that *the General correctly applied the Article 25 criteria the first time around*.[3]

(Emphasis added.)

The defense informed the military judge that because they felt there was still a defect in the panel, they were forced to abandon their request for trial by members and requested a trial by military judge alone. The military judge responded by informing the defense that he would not grant the request for a military judge alone if it was based on the defense position that the panel was improperly selected. The defense then stated that the panel selection process was not the sole reason for their request for a military judge-alone

---

[3] Again, the commanding general did not act as convening authority "the first time around" but rather his chief of staff was the convening authority in his absence.

trial. The military judge subsequently granted the request for trial by military judge alone.[4]

The United States Navy-Marine Corps Court of Criminal Appeals (CCA) considered the issue of proper panel selection and whether Bartee had been afforded both a fair panel and the appearance of a fair panel. *United States v. Bartee*, No. NMCCA 201500037, 2016 CCA LEXIS 11, at *12-13, 2016 WL 154628, at *3-5 (N-M. Ct. Crim. App. Jan. 12, 2016) (unpublished). The lower court held there was no cause to question the fairness of the convening of the second panel. 2016 CCA LEXIS 11, at *13-14, 2016 WL 154628, at *5 (citing *Ward*, 74 M.J. at 228).

Specifically, the CCA concluded that the convening authority and SJA had no improper motive to stack the member pool and noted that the convening authority had stated that he knew the selected members and believed them to be the best qualified under the Article 25 criteria. 2016 CCA LEXIS 11, at *13-14, 2016 WL 154628, at *5. In addressing whether the process resulted in the appearance of a fair panel, the CCA held that any appearance of impropriety had been resolved by the convening authority's personal knowledge of the members and his consultation of the entire command roster. 2016 CCA LEXIS 11, at *13, 2016 WL 154628, at *5. Therefore, the CCA held, there was no reason to "question the essential fairness and integrity of the court-martial," and affirmed the findings and sentence. 2016 CCA LEXIS 11, at *14-15, 2016 WL 154628, at *5.

## Discussion

Before this court there is no challenge by either party to the military judge's initial ruling that the panel was improperly convened. Therefore, the sole issue in this case is whether the second convening authority's resubmission of the same panel a day later, which differed from the initial submission only by the convening authority's proximity to the alpha roster and his statement that he personally knew the members selected, was sufficient to cure the taint of the initial improper solicitation and selection.

---

[4] In *United States v. Greene*, 20 C.M.A. 232, 239, 43 C.M.R. 72, 79 (1970), the Court of Military Appeals reversed a conviction where the appellant selected a military judge-alone trial to avoid court-martial before an improperly selected panel.

This court has previously approved member selection processes that include the SJA seeking nominations from commanders and presenting recommendations to the convening authority. *See United States v. Kemp*, 22 C.M.A. 152, 155, 46 C.M.R. 152, 155 (1973). However, "[t]his nomination process may not systematically exclude or include a certain category of servicemembers. When the request for nominations does improperly include or exclude certain members, this Court will ensure that those actions do not taint the selection by the convening authority." *Roland*, 50 M.J. at 69. Where an improper selection process has been utilized, this court has held that subsequent action by a convening authority in compliance with Article 25 will not, by itself, erase the taint. *Id.* at 68-69; *Hilow*, 32 M.J. at 442 ("[W]e have never held that the impact of [such] improper assistance can be ignored solely on the basis of the convening authority's official duty to personally select the members in accordance with the criteria of Article 25(d)(2).").

The selection of panel members is a well-litigated subject in the military justice system as it has been recognized since at least 1964 that Article 25 "implies all ranks and grades are eligible for appointment." *United States v. Crawford*, 15 C.M.A. 3, 58, 35 C.M.R. 3, 28 (1964); *see also Greene*, 20 C.M.A. at 239, 43 C.M.R. at 78. *Kirkland* and *Greene*, in particular, provide relevant precedent for our analysis of this case. In *Kirkland*, the special court-martial convening authority had requested subordinate commanders to nominate qualified personnel to be potential panel members. 53 M.J. at 23. However, the commanders were provided with a nomination chart from the legal office that only included a column for the ranks of E-7, E-8, and E-9, with no place to list a nominee in a lower grade. *Id.* Consequently no individuals in lower enlisted grades were nominated. *Id.* at 23-24. Although the convening authority was informed of the Article 25 requirements and that he could look outside the nomination list, he only appointed those enlisted members on the list. *Id.* at 25. Upon this foundation, we found the exclusion of potentially qualified members below the grade of E-7 to be improper. *Id.*; *see also United States v. McClain*, 22 M.J. 124, 130-31 (C.M.A. 1986) (rejecting the systematic exclusion of junior officers and enlisted members in pay grade E-6 and below for the improper purpose of avoiding lenient sentences). Ultimately, we held that "where [there is] an unresolved appearance that potentially qualified court

members … were excluded, reversal of the sentence is appropriate to uphold the essential fairness and integrity of the military justice system." *Kirkland,* 53 M.J. at 25 (internal quotation marks omitted) (citation omitted).

Similarly, in *Greene*, the originally proposed panel consisted of officers in the grade of lieutenant through colonel. 20 C.M.A. at 235, 43 C.M.R. at 75. However, the chief of military justice rejected that panel and directed that a new panel be submitted consisting only of officers in the grade of lieutenant colonel and above. *Id.* at 237, 43 C.M.R. at 77. This second list was adopted by the convening authority. *Id.* at 234, 43 C.M.R. at 74. Greene objected to the selection process for its exclusion of lower ranks. *Id.* at 234, 43 C.M.R. at 74. The military judge agreed and subsequently ordered the government to have the convening authority also consider officers in lower ranks in selecting the panel. *Id.* at 235, 43 C.M.R. at 75. The convening authority reconsidered his selection and resubmitted the same list, finding that those individuals were the best qualified under Article 25. *Id.* at 235-36, 43 C.M.R. at 75-76. On that basis, Greene elected to be tried by military judge alone. *Id.* at 236, 43 C.M.R. at 76.

The Court of Military Appeals held that, under the circumstances, including the convening authority's reconfirmation of the same panel, there was "a reasonable doubt as to whether the hurried decision to remain with this court was an unfettered one." *Id.* at 238, 43 C.M.R. at 78. The court ultimately reversed Greene's conviction as it could not "stand if [the accused] abandoned his right (and was tried by military judge alone) to avoid trial before an improperly selected panel." *Id.* at 239, 43 C.M.R. at 79.

While the majority relies on the *Dowty* factors in its analysis of the panel selection process, I find those factors provide little support for its position. The *Dowty* factors include:

1. Improper motive to "pack" the member pool;

2. Systemic exclusion of otherwise qualified members based on an impermissible variable like rank; and

3. Good faith efforts to be inclusive so courts-martial are open to all segments of the military community.

*Dowty*, 60 M.J. at 171.

As to the first factor, the record reveals that the SJA's primary motive was to improperly start the (top-down) process with a list of senior panel members, such that only if he could not find satisfactory senior members, he would work his way down through the ranks. The second factor needs little discussion as both lists were the admitted products of a system that excluded every member of the command under O-4 and E-8. As to the third factor, intentionally excluding a majority of potential panel members from consideration on the sole basis of rank is the antithesis of good faith efforts to be inclusive.

The military judge's second decision was based on his finding that there was no evidence of an improper motive on the part of the SJA and because the second convening authority knew the members and applied the Article 25 criteria. At no point in his second ruling did the military judge discuss whether the adoption of a list that was based upon an improper selection criteria, was improper or whether the selection process gave the appearance of a fair panel. Furthermore, while the CCA did explain the issue of the appearance of a fair panel, it did not address how the proximity of the alpha list and the convening authority's personal familiarity with the selected members somehow ameliorated the fact that the panel was the product of an improper "[b]lanket exclusion of qualified officers or enlisted members in the lower grades." *See Nixon,* 33 M.J. at 434.

In this case, both the military judge and the CCA held that the initial selection was a systematic exclusion of qualified members, based solely on rank.[5] After the military judge struck the initial list, the SJA provided the convening authority with the same improperly solicited list for his signature. The only difference in the process was that this time the convening authority was also given a physical copy of unit's alpha roster—a list that included over 8,700 names. As predicted by trial counsel, the convening authority merely "reconfirmed" the same panel.

The fact that the second convening authority was told he had the right to chose any member under his command does not ameliorate the initial error of excluding members based

---

[5] As noted, while the military judge appeared to retreat from this initial holding, the CCA clearly agreed with the military judge's initial holding that the first panel was improperly selected.

on rank in the selection worksheet.[6] *See Kirkland*, 53 M.J. at 24-25. Nor does the fact that the convening authority was handed the alpha roster remedy the error, as there is simply no evidence he ever consulted it—despite the CCA's factual finding that he did. Therefore, the taint of the first panel was transferred to the second panel when the same, improperly selected members were reconfirmed by the convening authority—particularly in light of trial counsel's reference to an in-place plan to do so.[7]

The future implications of the majority's holding are troubling. It is not difficult to envision that when a panel is held to be solicited in violation of Article 25, a convening authority need only be provided with an alpha list of his command, state that he knew he could select anyone in his command, and then reinstate the improperly convened panel with impunity. This would allow convening authorities to end-run decades of this court's precedent on the prohibition of excluding potential panel members on the basis of rank, and select only the most senior of panels, under the protection of our newest ruling. *See Kirkland*, 53 M.J. at 24;

---

[6] The initial convening authority had also been informed that he could select anyone in the command and the military judge struck the list he submitted as improperly excluding members on the basis of rank.

[7] Analyzing a similar situation, the Court of Military Appeals in *McClain*, held:

> The military judge found that the convening authority "adhered to the standards of Article 25 in making this selection." This finding, however, is not adequate to purge from the selection process the staff judge advocate's improper purpose of avoiding lenient sentences. In this connection, we note that – because "[d]iscrimination in the selection of court members on the basis of improper criteria threatens the integrity of the military justice system and violates the Uniform Code," *see United States v. Daigle*, 1 M.J. at 140 – this Court is especially concerned to avoid either the appearance or reality of improper selection.

22 M.J. at 132 (alteration in original).

*Daigle*, 1 M.J. at 141; *Greene*, 20 C.M.A. at 239, 43 C.M.R. at 79. This cavalier attitude toward the requirements of Article 25, on the part of the command and apparently disseminated to trial counsel should not be tolerated.

When the convening authority selected the same improperly convened members to the second panel, the taint of the initial panel remained, thus depriving Bartee of both a fair panel and the appearance of a fair panel. *See Ward*, 74 M.J. at 228. Therefore, because the improper exclusion based on rank was not resolved by the convening authority's re-selection of the same list, and in order to uphold the essential fairness and integrity of the military justice system,[8] I would set aside the findings and sentence and remand the matter for a rehearing with a properly selected panel.

---

[8] *McClain*, 22 M.J. at 133 (Cox, J., concurring in the result); *Kirkland*, 53 M.J. at 25.